# EXHIBIT A



**Goldstein, Borgen,
Dardarian & Ho**

Shareholders
David Borgen
Linda M. Dardarian
Laura L. Ho

Of Counsel
Barry Goldstein
Morris J. Baller

March 10, 2014

<u>**Via FedEx**</u>

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Ste. 100
Voorhees, NJ 08043

Re:   *Kenneth J. Lee and Mark G. Thompson, individually, on behalf of others similarly
situated, and on behalf of the general public v. JPMorgan Chase & Co.;
JPMorgan Chase Bank, National Association; and Does 1-10, inclusive*

**DEMAND FOR ARBITRATION**

To the American Arbitration Association:

Attached please find Claimants Kenneth Lee and Mark Thompson's Demand for
Arbitration submitted here as a class and collective action. Included are two copies of AAA's
Demand for Arbitration form, as well as copies of the arbitration clause to which Claimants'
employment with Respondents was subject.

Included are the names of the parties involved, a statement of the nature of the dispute,
and the remedies sought to resolve the issue.

Enclosed, as well, please find Claimants' filing fee of $200.

Claimants request that arbitration of their claims against Respondents commence as soon
as possible.

Sincerely,

David Borgen

DB/slw
Encl.

Copy to:

JPMorgan Chase & Co. (by first class mail)
Legal Department
c/o Legal Papers Served
1 Chase Manhattan Plaza – 26th Floor
New York, NY  10081

300 Lakeside Drive, Suite 1000, Oakland, CA  94612-3534    Tel 510. 763. 9800    Fax 510. 835. 1417    www.gbdhlegal.com
515485.3

EXHIBIT A
Page 4

-2-                                                    March 10, 2014

Daryl S. Landy (by electronic mail)
Morgan, Lewis & Bockius LLP
5 Park Plaza, Suite 1750
Irvine, CA  92614
dlandy@morganlewis.com

*Counsel for Respondents*

Bryan Schwarz (by electronic mail)
bryan@bryanschwartzlaw.com
Bryan Schwartz Law
1330 Broadway, Suite 1630
Oakland, CA  94612

*Additional counsel for Claimants*

515485.3

**AMERICAN ARBITRATION ASSOCIATION®**

## Employment Arbitration Rules Demand for Arbitration

*Please visit our website at www.adr.org if you would like to file this case online.*

Please visit our website at www.adr.org if you
would like to file this case online.
AAA Customer Service can be reached at 800-778-7879

**Mediation:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* ☑  *There is no additional administrative fee for this service.*

| **Parties (Claimant)** | **Representative's Name (if known):** |
|---|---|
| Kenneth Lee and Mark Thompson | David Borgen (additional counsel listed in Demand) |
| **Name of Claimant:** | **Firm (if applicable):** |
| Individually and on behalf of all others similarly situated | Goldstein, Borgen, Dardarian & Ho |
| **Address:** | **Address:** |
| Please contact through counsel | 300 Lakeside Drive, Suite 1000 |
| **City:**          **State:**          **Zip:** | **City:** Oakland   **State:** CA   **Zip:** 94612 |
| **Phone:**          **Fax:** | **Phone:** 510.763.9800   **Fax:** 510.835.1417 |
| **Email Address:** | **Email Address:** dborgen@gbdhlegal.com |

| **Parties (Respondent):** | Daryl S. Landy (additional counsel listed in Demand) |
|---|---|
| JPMorgan Chase and Co.; JPMorgan Chase Bank; National Association; and DOES 1-10 | **Representative's Name (if known):** Morgan, Lewis & Blockius LLP |
| **Name of Respondent:** | **Firm (if applicable):** |
| c/o Legal Papers Served | 5 Park Plaza, Suite 1750 |
| **Address:** | **Address:** |
| 1 Chase Manhattan Plaza - 26th Floor | |
| **City:** New York   **State:** NY   **Zip:** 10081 | **City:** Irvine   **State:** CA   **Zip:** 92614 |
| **Phone:**          **Fax:** | **Phone:** 949.399.7000   **Fax:** 949.399.7001 |
| **Email Address:** | **Email Address:** dlandy@morganlewis.com |

**Claim:** What was/is the employee's annual wage range?
*Note: This question is required by California law.*

☑ Less than $100,000   ☐ $100,000 - $250,000   ☐ Over $250,000

**Amount of Claim:** to be proven at trial

**Claim involves:**
☑ Statutorily Protected Rights   ☐ Non-statutorily protected rights

**In detail, please describe the nature of each claim. You may attach additional pages if necessary.**

See attached Exhibit A

**Other Relief Sought:** ☑ Arbitration Costs   ☑ Attorney's Fees   ☑ Interest   ☐ Punitive/Exemplary Damages   ☑ Other: penalties

**Neutral:** Please describe the qualifications for arbitrator(s) to hear this dispute:

The arbitrator should qualify under the AAA Employment Arbitration Rules and Mediation Procedures, Rule 12.

**Hearing:** Estimated time needed to present case at hearing:

Hours: _____   Days: approximately 5 days

Hearing locale: Los Angeles, California

☐ Requested by Claimant   ☑ Locale provision included in the contract

**Filing Fee:** ☑ Employer-Promulgated Plan fee requirement or $200   *(max amount per AAA rules)*
☐ Standard Fee Schedule for individually negotiated contracts   ☐ Flexible Fee Schedule for individually negotiated contracts
Amout Tendered: $200

**Notice:** To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. Send the original Demand to the Respondent.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-877-528-0879. If you have any questions regarding the waiver of administrative fees, AAA Case Filing Services can be reached at 877-495-4185.

**Signature of claimant or representative:** _____   Date: 3/10/14

EXHIBIT A
Page 6

Exhibit A

## I.   THE PARTIES AND THEIR COUNSEL

The Claimants are Kenneth Lee and Mark Thompson ("Claimants"), on behalf of themselves and all similarly situated employees.

Claimants are represented by:

David Borgen
dborgen@gbdhlegal.com
Laura L. Ho
lho@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Bryan J. Schwartz
bryan@bryanschwartzlaw.com
William Jhaveri-Weeks
bill@bryanschwartzlaw.com
BRYAN SCHWARTZ LAW
1330 Broadway, Suite 1630
Oakland, CA  94612
Tel:  (510) 444-9300
Fax:  (510) 444-9301

The Respondents are JPMorgan Chase & Co.; JPMorgan Chase Bank, National Association; and Does 1-10, (collectively, "Respondents").  Respondents are represented by:

Daryl S. Landy
dlandy@morganlewis.com
Sarah N. Dreschsler
sdreschsler@morganlewis.com
Alexander L Grodan
agrodan@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
5 Park Plaza, Suite 1750
Irvine, CA  92614
Tel:  949-399-7000
Fax:  949-399-7001

1

515484.3

## II.    NATURE OF DISPUTE

This dispute was initially filed as a class and collective action in the United States District Court for the Central District of California as *Lee, et al. v. JPMorgan Chase & Co., et al.*, No. 13-CV-00511 (JLS)(JPRx) on March 29, 2013. A second amended Complaint was filed on July 2, 2013. A true and correct copy of the Second Amended Complaint in this action is attached as Exhibit 1 to this Demand. On June 3, 2013, Respondents moved the court to compel arbitration of the matter, and subsequently, the parties stipulated to submit the parties' claims to arbitration. See attached as Exhibit 2 the August 16, 2013 Order Granting Stipulation Regarding Motions to Compel Arbitration and Dismissal of Claims. On September 20, 2013, Respondents filed a Motion to Compel Arbitration on an Individual Basis. On November 14, 2013, the District Court denied that motion, holding the issue of whether the relevant arbitration agreement permitted arbitration of Claimants' claims on a class or collective action basis was an issue to be decided by the arbitrator. See attached as Exhibit 3 the November 14, 2013 Order Denying Defendants' Motion to Compel Arbitration on an Individual Basis and Dismissing Action.

In accordance with the parties' arbitration agreement, Claimants now seek arbitration of their claims on behalf of themselves as well as others similarly situated and on behalf of the general public, against Respondents before the American Arbitration Association. See attached as Exhibit 4, Binding Arbitration Agreements.

This is an employment-related dispute arising from Respondents' misclassification of Claimants' job positions as exempt from state and federal overtime pay requirements.

Claimant Kenneth Lee ("Claimant Lee") was hired by Washington Mutual Bank as a Production Appraiser in the Commercial Term Lending division in approximately March 2007. Claimant continued in the same capacity after Respondents acquired Washington Mutual Bank in 2008. Claimant Lee worked in this capacity in both Los Angeles County and Orange County until March 2013.

Claimant Mark Thompson ("Claimant Thompson") was hired as a Review Appraiser by Washington Mutual Bank in their Commercial Term Lending division in approximately March 2005. After Respondents acquired Washington Mutual Bank in 2008, Claimant Thompson continued in that same capacity in Orange County until July 2012.

As a Production Appraiser, Claimant Lee was tasked with completing Respondents' strict internal appraisal procedures and forms in a routine and rote manner. Claimant Lee's primary duties consisted of routine mental work, dictated by detailed guidelines enforced by Respondents. Claimant Lee was required to follow a detailed "checklist" and retrieve or verify required data for each appraisal he produced from sources proscribed by Respondents. Claimant Lee lacked significant discretion over appraisal values he assigned. The appraisals he produced were subject to Respondents' review and Claimant was routinely instructed to adjust his appraisal at Respondents' direction.

As a Reviewer Appraiser, Claimant Thompson was likewise tasked with fulfilling Respondents' meticulously proscribed review procedures and forms in a routine and rote manner. Claimant Thompson's primary duties consisted of routine mental work dictated by

2

Respondents' detailed guidelines and oversight. Claimant Thompson was required to review and verify the contents of Respondents' "checklist" appraisal forms and cross-reference and verify the information submitted for review. Claimant Thompson lacked significant discretion over his review of the submitted appraisals and did not have final decision-making authority on appraisal values, as his own reviews were subject to Respondents' review and approval.

Under Respondents' strict direction and close supervision, Claimants exercised neither discretion nor independent judgment in the completion of their duties. Claimants did not supervise or direct the work of any other employees and had no authority to hire or fire other employees. Rather, Claimants themselves were closely supervised and restrained in the manner in which they were to complete their duties. Claimants were not involved in the management of Respondents' enterprise, or otherwise involved in Respondents' general business operations. Claimants did not consult with clients or analyze clients' needs. Claimants did not advise clients what financial services would best meet their needs or otherwise financially advise clients.

Further, Claimants were not required to, and did not, complete prolonged courses of specialized intellectual instruction in order to qualify for their respective positions. Claimant Lee has bachelor degrees in political science and public policy, and undertook no prolonged, specialized course of study to become an appraiser. Claimant Lee took a single class in preparation for a certified appraiser license test, after which he received on-the-job training as an apprentice appraiser before obtaining his certified general license. Claimant Thompson has a high school diploma and undertook no prolonged, specialized course of higher education or intellectual instruction to become an appraiser. At the time he became an appraiser, Claimant was not required by the State of California to be licensed. Ultimately, he took a single class in preparation for a test to obtain his certified general appraiser license.

Claimants were not learned professionals as defined by the FLSA or California law and did not administer Respondents' general business operations. Claimants' positions were as a production workers. Each appraisal or review Claimants completed related only to particular individual loans, and did not relate to Respondents' general business operations. Claimants' duties were to complete steps in the production of the financial products that were the primary output of Respondents' business. Claimants' positions did not relate to the general administrative work applicable to the running of Respondents' business. *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009).

Claimants were required to meet production quotas and Claimants' ability to meet those quotas affected the bonuses they received as well as their performance reviews. Failure to meet their respective quotas could result in Claimants' termination. The production quotas Respondents imposed were such that in order for Claimants to fulfill those requirements, they were required to regularly work more than eight hours in a day and more than 40 hours in a workweek. Respondents failed to pay Claimants overtime pay required by the Fair Labor Standards Act and the California Labor Code for hours worked over forty in a week or eight hours in a day. Misclassifying Claimants as exempt from the statute's overtime pay provisions, Respondents have operated under a scheme to deprive Claimants of appropriate overtime compensation.

3

515484.3

EXHIBIT A
Page 9

Those production quotas furthermore precluded Claimants from taking duty-free meal and rest breaks in accordance with the California Labor Code and its regulations. Respondents failed to compensate Claimants for those missed breaks.

Throughout Claimants' employment, Respondents failed to provide Claimants with timely, accurate, itemized wage statements which included hours worked. As a result, Claimants were impeded from knowing the total hours they worked and the amount of wages to which they are entitled.

Respondents further failed to reimburse Claimants for necessary expenditures related to the cost of supplies necessary to complete their work. Expenses incurred by Claimants included mileage, computer equipment, telephone and internet charges, and office supplies.

More than 30 days have passed since the termination of Claimants' employment with Respondents. To date, Respondents have failed to pay all wages Claimants earned during their employment.

Claimants, incorporating by reference paragraphs 18 through 31 of the Second Amended Complaint at Exhibit 1, bring this action on behalf of themselves and other employees similarly situated as authorized under FLSA, 29 U.S.C. § 216(b). Similarly situated employees are:

**Collective Class:** All persons who are or have been employed by Respondents as a commercial production appraiser ("Appraiser I," "Appraiser II," "Senior Appraiser," or positions consisting of similar job duties) or commercial review appraiser ("Review Appraiser," "Senior Review appraiser," or positions consisting of similar duties in the Commercial Term Lending Appraisal division within the United States at any time from three years prior to the filing of the initial Complaint to the final disposition of this case.

Incorporating by reference paragraphs 32 through 48 of the Second Amended Complaint at Exhibit 1, Claimants additionally bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class and subclasses:

**California Class:** All persons who are or have been employed by Respondents as Appraisers in the Commercial Term Lending Appraisal division (including production appraisers and review appraisers with such titles as "Appraiser I," "Appraiser II," "Senior Appraiser," "Review Appraiser," "Senior Review Appraiser," and any other position consisting of similar duties) within the State of California at any time from four years prior to the filing of the initial Complaint to the final disposition of this case.

**California Waiting Time Penalties Subclass:** All California Class members who are no longer employed by Respondents and have not been employed by Respondents for more than 72 hours.

**California Itemized Wage Statement and PAGA Penalties Subclass:** All California Class members who are currently employed by Respondents or were employed by Respondents at some point within the year preceding the filing of the initial Complaint in this action.

4

## III.   CLAIMS

Claimants incorporate by reference the allegations in the Second Amended Complaint filed in the underlying litigation, attached as Exhibit 1.

**A.   Failure to Pay Overtime Compensation in Violation of the Fair Labor Standards Act (29 USC § 207)**

Claimants, on behalf of themselves and Collective Class Members, allege that Respondents, in violation of the Fair Labor Standards Act, failed to compensate Claimants, and Collective Class Members for their hours worked in excess of 40 hours a week at a rate of one and one-half times the regular rate at which they were employed.

**B.   Failure to Pay Overtime Compensation in Violation of the California Labor Code (California Labor Code §§ 510, 1194 and 1198 and IWC Wage Order(s))**

Claimants, on behalf of themselves and California Class Members, allege that Respondents, in violation of the California Labor Code and its regulations, failed to compensate Claimants, and California Class Members for their hours worked in excess of eight hours in a day or 40 hours a week at a rate of one and one-half times the regular rate at which they were employed.

**C.   Failure to Provide Itemized Wage Statements (California Labor Code § 226)**

Claimants, on behalf of themselves and members of the California Itemized Wage Statements and PAGA Penalties Sublcass, allege that Respondents, in violation of the California Labor Code, failed to provide timely, accurate, itemized wage statements, including hours worked.

**D.   Failure to Reimburse Business Expenses (California Labor Code § 2802)**

Claimants, on behalf of themselves and California Class Members, allege that Respondents failed to fully indemnify Claimants and California Class Members for their necessary expenditures related to the cost of supplies necessary to complete their work, including mileage, computer equipment, telephone and internet charges, and office supplies as required under California Labor Code Section 2802.

**E.   Failure to Provide Rest Breaks and Meal Periods (California Labor Code §§ 512, 226.7, and IWC Wage Order(s))**

Claimants, on behalf of themselves and California Class Members, allege that Respondents failed to provide Claimants and California Class Members with meal breaks as required by California law.  Claimants further allege that Respondents failed to authorize and permit Claimants and California Class Members to take statutorily required rest periods.

5

515484.3

**F.    Unfair Practice under the Unfair Competition Act (Business and Professions Code § 17200, *et seq.*)**

On behalf of themselves, and California Class Members, Claimants allege that Respondents' conduct as alleged herein, including failure to pay full wages owed or business expense reimbursements to Claimants and California Class Members constitutes unlawful business actions and practices in violation of Business and Professions Code § 17200 *et seq.*

**G.    Late Pay and Waiting Time Penalties (California Labor Code §§ 201 and 202)**

Claimants, on behalf of themselves and the California Waiting Time Penalties Subclass, allege that Respondents' willfully failed to pay all wages due Claimants and Subclass Members more than 30 days after the conclusion of the employment relationship, in violation of California Labor Code Sections 201 and 202.

**H.    Civil Penalties under California Private Attorney General Act of 2004 (California Labor Code § 2698, *et seq.*)**

On March 29, 2013, Claimants provided notice to the Labor and Workforce Development Agency ("LWDA") pursuant to California Labor Code Section 2699.3 and inquired whether the LWDA intended to investigate their alleged labor code violations. See Exhibit D to the Second Amended Complaint attached as Exhibit 1. To date, Claimants have not received notice from the LWDA regarding its intention to investigate the matter.

Therefore, Claimants, on behalf of themselves and California Itemized Wage Statement and PAGA Penalties Subclass, seek to collect civil penalties pursuant to California Labor Code Sections 558, 226.3, and 2699(f)(2) for Respondents' violation of California Labor Code Sections 201, 202, 226(a), 226.7, 510, 512, and 2802.

## IV.    RELIEF SOUGHT

As a result of the above-described violations of federal law, Claimants, on behalf of themselves and members of the Collective and California Classes, seek the following relief:

A.    That the arbitrator find that this matter may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.    That as to the California Class, Respondents be found to have violated the overtime, meal/ rest period, itemized wage statements/ time records, failure to reimburse and failure to timely pay wages penalty provisions of the California Labor Code as cited herein;

C.    That the arbitrator find that this matter may proceed as a collective action under 29 U.S.C. § 216(b);

D.    That Respondents are found to have violated the overtime provisions of the FLSA as to Claimants and the Collective Class;

6

515484.3

E.  That Respondents are found to have violated the FLSA by failing to maintain accurate time records of all the hours worked by Claimants and the Collective Class;

F.  That Respondents' violations as described above are found to be willful;

G.  An award to Claimants and the California and Collective Classes are for the amount of unpaid wages owed, liquidated damages and penalties where provided by state and federal law, and interest thereon, subject to proof at trial;

H.  That the Court Award waiting time penalties under California Labor Code § 203;

I.  That the Court award penalties and attorneys' fees and costs under PAGA for violations under Labor Code §§ 201, 202, 203, 218.5, 226, 226.3, 226.7, 510, 512, 558, 1194, 1198, the Industrial Welfare Commission Wage Orders and any other applicable violations;

J.  That Respondents be ordered and enjoined to pay restitution to Claimants and the California Class due to Respondents' unlawful activities, pursuant to California state law cited above;

K.  That Respondents further be enjoined to cease and desist from unlawful activities in violation of state laws cited above;

L.  That the arbitrator grant declaratory relief stating that Respondents' scheme is unlawful;

M.  That the arbitrator grant Claimants an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216, California Labor Code § 1194, and/or other applicable state laws; and

N.  Such other and further relief, in law or equity as may be appropriate and just.

7

# EXHIBIT 1

1  BRYAN SCHWARTZ LAW
2  Bryan J. Schwartz (SBN 209903)
3  Michael D. Thomas (SBN 280450)
   William C. Weeks (SBN 289984)
4  Email: bryan@bryanschwartzlaw.com
5          michael@bryanschwartzlaw.com
           bill@bryanschwartzlaw.com
6  1330 Broadway, Suite 1630
7  Oakland, CA 94612
   Telephone: (510) 444-9300
8  Facsimile: (510) 444-9301

9
   *Attorneys for Individual and Representative*
10 *Plaintiffs and the Putative Class*

11              UNITED STATES DISTRICT COURT
12              CENTRAL DISTRICT OF CALIFORNIA

13

14 KENNETH J. LEE, MARK G. THOMPSON,      Case No.:  13-CV-511 (JST) (JPR)
   and DAVID C. ACREE individually, on behalf
15 of others similarly situated, and on behalf of   **CLASS AND COLLECTIVE**
   the general public,                             **ACTION**
16
17              Plaintiffs,                         **SECOND AMENDED COMPLAINT**
                                                    **FOR DAMAGES, RESTITUTION**
18                                                  **AND INJUNCTIVE RELIEF**

19     vs.
                                                    1.  **Violation of Fair Labor**
20                                                      **Standards Act, 29 U.S.C. § 207**
21 JPMORGAN CHASE & CO.; JPMORGAN
   CHASE BANK, NATIONAL                             2.  **Violation of California Labor**
22 ASSOCIATION; and DOES 1-10, inclusive              **Code §§ 510, 1194, and 1198, and**
                                                      **IWC Wage Order(s)**
23
24              Defendants.                         3.  **Failure to Provide Itemized Wage**
                                                      **Statements (Cal. Labor Code**
25                                                    **§ 226)**

                                                    4.  **Failure to Reimburse Business**
26                                                      **Expenses (Cal. Labor Code**
                                                      **§ 2802)**
27

28

          SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

5.  **Failure to Provide and/or Authorize Meal and Rest Periods (California Labor Code §§ 512, 226.7, and IWC Wage Order(s))**

6.  **Violation of Cal. Business and Professions Code § 17200,** *et seq.*

7.  **Waiting Time Penalties (Cal. Labor Code § 203)**

8.  **Civil Penalties Pursuant to Labor Code Private Attorneys General Act of 2004 (Cal. Labor Code § 2698,** *et seq.***)**

**DEMAND FOR JURY TRIAL**

## I.   PRELIMINARY STATEMENT

1.     This is a collective and class action brought by Individual and Representative Plaintiffs Kenneth J. Lee, Mark G. Thompson, and David C. Acree on their own behalf and on behalf of the proposed Collective and California Classes identified below. Plaintiffs and the putative class members were or are employed by Defendant JPMorgan Chase & Co. as commercial appraisers, including production appraisers ("Appraiser I;" "Appraiser II;" "Senior Appraiser;" and any other position performing similar job duties) and review appraisers ("Review Appraiser;" "Senior Review Appraiser;" and any other position performing similar job duties) (collectively, "Appraisers"). As Appraisers, Plaintiffs and the putative class members are, were, or should have been classified as covered, non-exempt employees under federal and state wage and hour laws, and entitled to overtime pay consistent with the requirements of these laws. These employees are similarly situated under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

2.     The Collective Class is made of all persons who are or have been employed by Defendants as Appraisers in the Commercial Term Lending ("CTL")

---

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

EXHIBIT A
Page 16

1   Appraisal division of Defendants' commercial banking operations in the United

2   States within three years prior to this action's filing date through the date of final

3   disposition of this action (the "Collective Class Period").

4        3.    The California Class is made up of all persons who are or have been

5   employed by Defendants as Appraisers in the CTL Appraisal division of

6   Defendants' commercial banking operations in the State of California within four

7   years prior to this action's filing date through the date of final disposition of this

8   action (the "California Class Period").

9        4.    The California Waiting Time Penalties Subclass is made up of all

10  California Class members who are no longer employed by Defendants and have

11  not been employed by Defendants for more than 72 hours.

12       5.    The California Itemized Wage Statement and PAGA Penalties

13  Subclass is made up of all California Class members who are currently employed

14  by Defendants or were employed by Defendants at some point within the year

15  preceding the filing of the initial Complaint in this action, such that they are

16  eligible to seek penalties for failure to provide itemized wage statements and

17  penalties under the California Labor Code § 2698, *et seq.*, Private Attorneys

18  General Act of 2004 ("PAGA").

19       6.    During the Collective Class Period and the California Class Period,

20  Defendants failed to pay appropriate overtime compensation to each member of the

21  Collective Class and California Class as required by federal and state law.

22  Plaintiffs seek relief for the California Class pursuant to applicable state law, rules,

23  regulations, and Wage Orders of the Industrial Welfare Commission ("IWC"). The

24  relief sought is to remedy the Defendants' failure to:  pay appropriate overtime

25  compensation, provide or authorize meal and rest periods, reimburse Plaintiffs for

26  necessary business expenses, and maintain accurate time records, in addition to

27  restitutionary and injunctive relief.

28

2

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

## II.   THE PARTIES

1

2      7.     Individual and representative Plaintiff Kenneth J. Lee resides in Long

3   Beach, California (Los Angeles County). He was employed from March 5, 2007

4   through March 11, 2013 as a production "Appraiser II" in commercial term

5   lending, first by Washington Mutual Bank and then by its successor-in-interest

6   JPMorgan Chase & Co., most recently in Culver City, California (Los Angeles

7   County). Plaintiff Lee brings his claim on behalf of himself and the Collective and

8   California Classes. A written consent form for Plaintiff Lee is attached as Exhibit

9   A.

10     8.     Individual and representative Plaintiff Mark G. Thompson resides in

11   Yorba Linda, California (Orange County). He was employed from March 2005

12   through July 3, 2012 as a "Senior Review Appraiser" in commercial term lending,

13   first by Washington Mutual Bank and then by its successor-in-interest JPMorgan

14   Chase, in Irvine, California (Orange County). Plaintiff Thompson brings his claim

15   on behalf of himself and the Collective and California Classes. A written consent

16   form for Plaintiff Thompson is attached as Exhibit B.

17     9.     Individual and representative Plaintiff David C. Acree resides in Los

18   Angeles, California (Los Angeles County). He was hired by Chase as a production

19   appraiser on November 15, 2010. He is currently employed in that capacity.

20   Plaintiff Acree brings his claim on behalf of himself and the Collective and

21   California Classes. A written consent form for Plaintiff Acree is attached as

22   Exhibit C.

23     10.    Upon information and belief, Defendant JPMorgan Chase & Co. is a

24   Delaware Corporation doing business in and maintaining offices in several states

25   throughout the United States, including California. Defendant JPMorgan Chase &

26   Co. purposefully availed itself of the privileges of conducting business in

27   California.

28

3

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

11.     Upon information and belief, Defendant JPMorgan Chase Bank, National Association, is a national bank with U.S. branches in 23 states, is a wholly owned subsidiary of Defendant JPMorgan Chase & Co., and has purposefully availed itself of the privileges of conducting business in California.

12.     Upon information and belief, JPMorgan Chase & Co. is composed of four major business segments, one of which is Commercial Banking. Commercial Banking, in turn, is composed of four primary segments, one of which is Commercial Term Lending. According to JPMorgan Chase & Co.'s most recent Form 10-K filed with the United States Securities and Exchange Commission, CTL primarily provides term financing to real estate investors/owners for multifamily properties as well as financing office, retail, and industrial properties. According to the 10-K, CTL's revenue in 2012 was $1.2 billion. Plaintiffs were or are employed as Appraisers in the CTL business segment.

13.     Upon information and belief, Defendant JPMorgan Chase & Co. is successor-in-interest to Washington Mutual Bank, whose banking operations JPMorgan Chase & Co. acquired on or about September 25, 2008.

14.     Defendants Does 1-10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged, and that the damages of Plaintiffs and the putative class members herein alleged were proximately caused by such Defendants.

15.     Plaintiffs are informed, believe, and thereon allege that each of the Defendants herein was at all times relevant to this action the agent, employee, representative partner, and/or joint venturer of the remaining Defendants and was

4

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1    acting within the course and scope of the relationship. Plaintiffs are further

2    informed, believe, and thereon allege that each of the Defendants herein gave

3    consent to, ratified and authorized the acts alleged herein to the remaining

4    Defendants.

5    ### III.   JURISDICTION AND VENUE

6    16.   This Court has subject matter jurisdiction pursuant to 28 U.S.C.

7    § 1331, as this case is brought under the FLSA, 29 U.S.C. §§ 207, 216(b). Each

8    representative Plaintiff has signed a consent form to join this lawsuit, attached

9    hereto as Exhibits A-C. This Court has original jurisdiction over all of the state and

10   federal claims herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d),

11   because, upon information and belief, the amount in controversy exceeds

12   $5,000,000 and the parties are citizens of diverse jurisdictions. This Court also has

13   supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C.

14   § 1367.

15   17.   Venue is proper in the United States District Court for the Central

16   District of California pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part

17   of the events giving rise to the claims set forth herein occurred in this district.

18   ### IV.   COLLECTIVE ACTION ALLEGATIONS

19   18.   Plaintiffs bring this action on behalf of themselves and other

20   employees similarly situated as authorized under FLSA, 29 U.S.C. § 216(b). The

21   employees similarly situated are:

22   **Collective Class:**   All persons who are or have been employed by

23   Defendants as a commercial production appraiser ("Appraiser I;" "Appraiser II;"

24   "Senior Appraiser;" or positions consisting of similar job duties) or commercial

25   review appraiser ("Review Appraiser;" "Senior Review Appraiser;" or positions

26   consisting of similar job duties) in the CTL Appraisal division within the United

27   States at any time from three years prior to the filing of this Complaint to the final

28

5

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1    disposition of this case.

2         19.    Upon information and belief, Defendants suffered and permitted

3    Plaintiffs and the Collective Class to work more than forty hours per week without

4    appropriate overtime compensation.

5         20.    Defendants' unlawful conduct has been widespread, repeated, and

6    consistent.

7         21.    Upon information and belief, Defendants knew that Plaintiffs and the

8    Collective Class performed work that required overtime pay. Defendants have

9    operated under a scheme to deprive these employees of appropriate overtime

10   compensation by failing to properly compensate them for all hours worked.

11        22.    Upon information and belief, Defendants misclassified Plaintiffs and

12   members of the Collective Class with the job titles of Appraiser I, Appraiser II,

13   Senior Appraiser, Review Appraiser, or Senior Review Appraiser, or with similar

14   duties to persons with such job titles or any job title held by Plaintiffs, as "exempt"

15   from federal and state overtime laws. Defendants misrepresented to these

16   employees that they were "exempt" and therefore were not entitled to overtime pay

17   for hours worked in excess of forty a week.

18        23.    Plaintiffs are not learned professionals as defined by the FLSA.

19        24.    The primary duties of Plaintiffs and the Collective Class consisted of

20   routine mental work, dictated by detailed guidelines enforced by Defendants. In

21   essence, Plaintiffs and the Collective Class members were required to follow a

22   detailed "checklist" and retrieve or verify required data for each appraisal they

23   produced or reviewed.

24        25.    Plaintiffs and the Collective Class members are subject to productivity

25   requirements and are production workers, not administrators of Defendants'

26   general business operations or makers of Defendants' overarching policies.

27

28

                                         6
     SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1        26.    Although Defendants pay lip service to providing a "work/life

2    balance" for Appraisers, Defendants are essentially employing Plaintiffs in an

3    appraisal sweatshop. Plaintiffs are required to churn through a minimum number of

4    "billings" – *i.e.*, appraisals – each month, and are constantly threatened with

5    discipline up to and including termination if they fail to meet their production

6    quotas. Production Appraisers, such as Plaintiffs Lee and Acree, must produce

7    each appraisal report under Defendants' pre-established guidelines, within a set

8    period of time and by a set due date for each appraisal. They are trained to apply

9    Defendants' pre-established guidelines and procedures as they find them. Review

10   Appraisers, such as Plaintiff Thompson, are glorified proofreaders who must apply

11   the strict and detailed guidelines to check that Production Appraisers have

12   correctly followed the protocol. Defendants measure the performance of

13   Appraisers by assessing their productivity and their adherence to Defendants'

14   production or review quotas and other pre-established guidelines and procedures.

15       27.    To meet Defendants' quotas, Appraisers frequently are required to

16   work far in excess of forty hours per week. Plaintiffs regularly work on weekends

17   and holidays in order to meet their "billings" requirements. Plaintiff Lee regularly

18   worked 70 hours per week, often worked more than 12 hours per day, and often

19   worked seven days in a row for more than eight hours per day. If Plaintiffs take

20   vacation or sick days, they receive no credit toward their billing requirements and

21   must work additional overtime during the rest of the month to make up for billings

22   that they failed to achieve as a result of having taken vacation or sick days. As a

23   result, there is no real "vacation time" or "sick leave" – there is simply

24   "reallocation of work" to the part of the month when Appraisers are not on

25   vacation or sick.

26       28.    Appraisers' bonuses were based in large part on meeting their

27   production quotas.

28

7

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

29.    Plaintiffs lack significant discretion over appraisal values they assign. Defendants' managers supervising Plaintiffs are the ones who have discretion over appraisal values, and have, upon information and belief, at times required class members to alter their valuations in order to ensure that the valuation results are in line with Defendants' desired final valuation – *i.e.*, a valuation that will allow Defendants to sell a given loan or refinancing transaction.

30.    Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

31.    Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly-situated employees are known to Defendants and are readily identifiable through Defendants' records.

## V.    CALIFORNIA CLASS ALLEGATIONS

32.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") on behalf of the following defined class:

**Proposed California Class:** All persons who are or have been employed by Defendants as Appraisers in the CTL Appraisal division (including production appraisers and review appraisers, with such titles as "Appraiser I;" "Appraiser II;" "Senior Appraiser"; "Review Appraiser;" "Senior Review Appraiser;" and any other position consisting of similar duties) within the State of California at any time from four years prior to the filing of this Complaint to the final disposition of this case.

8

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1    33.    Plaintiffs Lee and Thompson bring this action as a class action

2    pursuant to Rule 23 of the FRCP on behalf of the following defined subclass:

3    **Proposed California Waiting Time Penalties Subclass:** All California

4    Class members who are no longer employed by Defendants and have not been

5    employed by Defendants for more than 72 hours.

6    34.    Plaintiffs Lee, Thompson and Acree bring this action as a class action

7    pursuant to Rule 23 of the FRCP on behalf of the following defined subclass:

8    **Proposed California Itemized Wage Statement and PAGA Penalties**

9    **Subclass:**    All California Class members who are currently employed by

10   Defendants or were employed by Defendants at some point within the year

11   preceding the filing of the initial Complaint in this action.

12   35.    Plaintiffs, on behalf of themselves and the California class, allege and

13   incorporate by reference the allegations in the preceding paragraphs.

14   36.    Numerosity:    The Proposed California Class (and each of the

15   Proposed California Subclasses) is so numerous that joinder of all members is

16   impracticable. Plaintiffs are informed and believe, and on that basis allege, that

17   during the relevant time period, Defendants employed several dozen people who

18   are geographically dispersed and who satisfy the definition of the Proposed

19   California Class (and each of the Proposed California Subclasses).

20   37.    Typicality:    Plaintiffs' claims are typical of the members of the

21   Proposed California Class. Plaintiffs are informed and believe that, like other

22   Appraisers, they routinely worked more than eight hours per day and more than 40

23   hours per week during the Class Period. Plaintiffs had the same duties and

24   responsibilities as other Class members and were subject to Defendants' policy and

25   practice of: improperly treating and classifying these employees as "exempt" from

26   state overtime law; misrepresenting to these employees that they were exempt from

27   state overtime law; improperly failing to pay appropriate overtime compensation

28

9
SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1   for all hours worked; failing to provide or authorize meal and rest breaks in
2   compliance with state laws; failing to maintain accurate time records of hours
3   worked by the Proposed California Class; and failing to reimburse these employees
4   for routine business expenses.

5       38.   Plaintiffs Lee and Thompson are typical of the California Waiting
6   Time Penalties Subclass, in that they, like other members of the subclass, were not
7   paid all wages due within the time specified by the Labor Code, and are therefore
8   entitled to Penalties.

9       39.   Plaintiffs are typical of the California Itemized Wage Statement and
10  PAGA Penalties Subclass, in that they are employed by Defendants or were so
11  employed within one year prior to the filing of this suit, and Defendants failed to
12  issue them accurate itemized wage statements and violated wage laws giving rise
13  to PAGA penalties.

14      40.   In addition, Plaintiffs are informed and believe that, like other
15  Appraisers, they were not fully reimbursed or indemnified by Defendants for
16  expenses incurred when performing work for Defendants from their home offices,
17  or when they travelled to view properties they were required to appraise for
18  Defendants.

19      41.   Superiority: A class action is superior to other available methods for
20  the fair and efficient adjudication of this controversy, particularly in the context of
21  wage and hour litigation where individual Plaintiffs lack the financial resources to
22  vigorously prosecute separate lawsuits in federal court against large corporate
23  defendants, and fear retaliation and blackballing in their industry. Prosecuting
24  dozens of identical individual lawsuits statewide does not promote judicial
25  efficiency, equity, or consistency in judicial results.

26      42.   Adequacy: Plaintiffs will fairly and adequately protect the interests of
27  the Proposed California Class, have no conflicts with the Proposed California
28

10

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1  Class's interests, and have retained counsel experienced in complex wage and hour
2  class and collective action litigation.

3      43.   Commonality:      Common questions of law and fact exist as to all
4  members of the Proposed California Class and predominate over any questions
5  solely affecting individual members of the Proposed California Class, including
6  but not limited to:

7          A.   Whether Defendants improperly classified Plaintiffs and
8               members of the Proposed California Class as exempt;

9          B.   Whether Defendants unlawfully failed to fully pay appropriate
10              overtime compensation to members of the Proposed California
11              Class in violation of state wage laws;

12         C.   Whether Plaintiffs and Proposed California Class members who
13              are no longer employed with Defendants are entitled to
14              penalties for failure to timely pay wages upon termination of
15              employment, pursuant to the applicable state laws;

16         D.   Whether Defendants' policies and practices provide and/or
17              authorize meal and rest periods in compliance with applicable
18              state laws;

19         E.   Whether Defendants failed to keep accurate time records for all
20              hours worked by the Plaintiffs and the Proposed California
21              Class in violation of state wage laws;

22         F.   Whether Defendants paid Plaintiffs and Proposed California
23              Class members for the full vacation time they earned, based, as
24              promised, on their actual hours worked, including overtime
25              hours;

26         G.   Whether Plaintiffs and the Proposed California Class incurred
27              necessary business expenses in discharging their duties to

28
                                        11
     SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1                 Defendants, and whether Defendants maintained a policy or

2                 procedure of failing to fully reimburse Plaintiffs and the

3                 Proposed California Class for these necessary business

4                 expenses;

5       H.     The proper measure of damages sustained by the Proposed

6                 California Class; and

7       I.     Whether Defendants' actions were "willful."

8       44.   Common questions of law and fact exist as to all members of the

9  Proposed California Waiting Time Penalties Subclass, and predominate over any

10  questions solely affecting individual members of that Subclass, including but not

11  limited to:

12              Whether Defendants' policy and practice of failing to pay its

13              employees all wages due within the time required by law after

14              their employment ended violates the law and warrants waiting

15              time penalties under Cal. Labor Code §§ 200, 201, 202, and

16              203.

17       45.   Common questions of law and fact exist as to all members of the

18  Proposed California Class Itemized Wage Statement and PAGA Penalties

19  Subclass, and predominate over any questions solely affecting individual members

20  of that Subclass, including but not limited to:

21       A.     Whether Defendants provided adequate itemized wage

22                 statements to the Plaintiff and the California Class pursuant to

23                 applicable state wage laws;

24       B.     Whether Defendants owe penalties and attorneys' fees under

25                 PAGA for the wage violations;

26

27

28

12

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

46.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

47.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed California Class (and each of the Proposed California Subclasses) predominate over any questions affecting only individual members of the Proposed California Class (and Subclasses), and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the Proposed California Class members the overtime pay to which they are entitled. The damages suffered by the individual Proposed California Class members are small compared to the expense and burden of individual prosecution of this litigation. Proposed California Class members fear workplace retaliation and being "blackballed" from obtaining future employment in the appraisal industry. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

48.    Plaintiffs intend to send notice to all members of the Proposed California Class to the extent required by Rule 23. The names and addresses of the members of the Proposed California Class are available from Defendants.

13

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

## FIRST CLAIM FOR RELIEF

### Failure to Pay Overtime Compensation in Violation of the Fair Labor Standards Act (On Behalf of Plaintiffs and the Collective Class)

49.   Plaintiffs, on behalf of themselves and the collective class, allege and incorporate by reference the allegations in the preceding paragraphs.

50.   Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b). Plaintiffs' written consent forms are attached hereto as Exhibits A-C. Plaintiffs anticipate that other individuals will continue to sign consent forms and join as plaintiffs.

51.   At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed and continue to employ employees, including Plaintiffs and the Collective Class. At all relevant times, upon information and belief, Defendants have had gross operating revenues in excess of $500,000.

52.   The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

53.   During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the other Collective Class members worked in excess of forty hours per workweek. Despite the hours worked by Plaintiffs and the Collective Class members, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them the appropriate overtime compensation for all the hours worked in excess of forty.

54.   By failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective Class, Defendants have failed to

14

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1  make, keep, and preserve records with respect to each of its employees sufficient to

2  determine their wages, hours, and other conditions and practice of employment, in

3  violation of the FLSA, 29 U.S.C. § 201 *et seq.*

4       55.   The foregoing conduct, as alleged, constitutes a willful violation of

5  the FLSA, within the meaning of 29 U.S.C. § 255(a).

6       56.   Plaintiffs, on behalf of themselves and the Collective Class, seek

7  damages in the amount of their respective unpaid overtime compensation,

8  liquidated damages from three years immediately preceding the filing of this

9  action, plus interests and costs as allowed by law, pursuant to 29 U.S.C. §§ 216(b)

10  and 255(a), and such other legal and equitable relief as the Court deems just and

11  proper.

12       57.   Plaintiffs, on behalf of themselves and the Collective Class, seek

13  recovery of their attorneys' fees and costs to be paid by Defendants, as provided by

14  the FLSA, 29 U.S.C. § 216(b).

15                    **SECOND CLAIM FOR RELIEF**

16   **Failure to Pay Overtime Compensation in Violation of California Law**

17          **(On Behalf of Plaintiffs and the California Class)**

18       58.   Plaintiffs, on behalf of themselves and the California Class, allege and

19  incorporate by reference the allegations in the preceding paragraphs.

20       59.   At all relevant times herein, IWC Wage Order No. 4 (8 C.C.R.

21  § 11040) and California Labor Code § 510 required employers, like Defendants, to

22  pay overtime premiums for hours worked in excess of 8 in a given workday, 40 in

23  a given workweek, or on the seventh day worked in a single workweek. Pursuant

24  to California Labor Code § 1198, it is unlawful to employ persons for hours longer

25  than the hours set by the Industrial Welfare Commission ("IWC"), or under

26  conditions prohibited by the applicable wage orders of the IWC.

27

28

15

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

60.    Plaintiffs are informed and believe, and thereon allege, that members of the Class worked in excess of eight hours per day and in excess of 40 hours per week, and Defendants unlawfully failed to pay members of the Class the proper overtime compensation required in violation of IWC Wage Order 4 (8 C.C.R. § 11040) and California Labor Code §§ 510 and 1198. Pursuant to California Labor Code § 1194, the Plaintiffs and the other Class members are entitled to recover their unpaid overtime compensation.

61.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and the Class have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants, in an amount to be established at trial, plus damages, interest, attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

**Failure to Provide Accurate Itemized Wage Statements**

**(On Behalf of Plaintiffs and the California Itemized Wage Statements and**

**PAGA Penalties Subclass)**

62.    Plaintiffs, on behalf of themselves and the California Itemized Wage Statements and PAGA Penalties Subclass, allege and incorporate by reference the allegations in the preceding paragraphs.

63.    California Labor Code § 226(a) provides that, at the time of each payment of wages, an employer shall provide each employee with a wage statement itemizing, among other things, the total hours worked by the employee in the pay period. California Labor Code § 226(e) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code § 226(a) may recover the greater of his or her actual damages or a penalty of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period (up to a maximum of $4,000), in addition to attorneys' fees and costs.

16

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1    64.    Defendants knowingly and intentionally failed to provide timely,
2  accurate, itemized wage statements including, *inter alia,* of hours worked, to
3  Plaintiffs and the Subclass in accordance with Labor Code § 226(a). Such failure
4  caused injury to Plaintiffs and the Subclass members, by, among other things,
5  impeding them from knowing the total hours worked and the amount of wages to
6  which they are and were entitled. Plaintiffs and the Subclass are therefore entitled
7  to the damages and penalties provided for under Labor Code § 226(e).
8  Additionally, pursuant to Code of Civil Procedure § 1021.5, *inter alia,* Plaintiffs
9  and the Subclass are entitled to attorneys' fees and costs. Pursuant to Labor Code
10  § 226(g), Plaintiffs are also entitled to seek injunctive relief requiring Defendants
11  to comply with Labor Code § 226(a).

12                    **<u>FOURTH CLAIM FOR RELIEF</u>**
13              **Failure to Reimburse for Business Expenses**
14           **(On Behalf of Plaintiffs and the California Class)**

15    65.    Plaintiffs, on behalf of themselves and the California Class, allege and
16  incorporate by reference the allegations in the preceding paragraphs.

17    66.    California Labor Code § 2802(a) requires an employer to indemnify
18  its employees "for all necessary expenditures or losses incurred by the employee in
19  direct consequence of the discharge of his or her duties." California Labor Code
20  § 2802(b) provides that all awards made under California Labor Code § 2802(a)
21  shall "carry interest at the same rate as judgments in civil actions" and that interest
22  "shall accrue from the date on which the employee incurred the necessary
23  expenditure or loss."

24    67.    Defendants failed to fully indemnify Plaintiffs and the California
25  Class for their necessary expenditures related to the cost of supplies necessary to
26  complete their work, including, but not limited to, mileage, peripheral computer
27  equipment, telephone charges, Internet charges, and office supplies. To the extent
28

17

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1  that Defendants reimbursed employees for some of their necessary business

2  expenses, Defendants' policy and practice was to reimburse employees less than

3  the amount of the expenses the employees actually incurred.

4       68.   Plaintiffs and the Class Members are therefore entitled to full

5  reimbursement for said expenditures and all other relief provided by California

6  law, including but not limited to attorneys' fees and costs, pursuant to Code of

7  Civil Procedure § 1021.5, *inter alia*, and injunctive relief requiring Defendants to

8  pay reimbursement to its employees for such routine business expenses.

9  **FIFTH CLAIM FOR RELIEF**

10  **Failure to Provide Rest Breaks and Meal Periods**

11  **(On Behalf Plaintiffs and the California Class)**

12       69.   Plaintiffs, on behalf of themselves and the California Class, allege and

13  incorporate by reference the allegations in the proceeding paragraphs.

14       70.   California Labor Code § 512 prohibits an employer from employing

15  an employee for a work period of more than five hours per day without providing

16  the employee with a meal period of not less than 30 minutes, or for a work period

17  of more than 10 hours per day without providing the employee with a second meal

18  period of not less than 30 minutes.

19       71.   Section 11 of Wage Order No. 4 provides (and at all times relevant

20  hereto provided) in relevant part that:

21      No employer shall employ any person for a work period of more than
22      five (5) hours without a meal period of not less than 30 minutes,
    except that when a work period of not more than six (6) hours will
23      complete the day's work the meal period may be waived by mutual
    consent of the employer and the employee. Unless the employee is
24      relieved of all duty during a 30 minute meal period, the meal period
    shall be considered an "on duty" meal period and counted as time
25      worked. An "on duty" meal period shall be permitted only when the
26      nature of the work prevents an employee from being relieved of all
27      duty and when by written agreement between the parties an on-the-

28

18

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1    job paid meal period is agreed to. The written agreement shall state
2    that the employee may, in writing, revoke the agreement at any time.

3    If an employer fails to provide an employee a meal period in
4    accordance with the applicable provisions of this order, the employer
5    shall pay the employee one (1) hour of pay at the employee's regular
     rate of compensation for each workday that the meal period is not
6    provided.

7    72.    Section 12 of Wage Order No. 4 provides (and at all times relevant
8    hereto provided) in relevant part that:

9    Every employer shall authorize and permit all employees to take rest
10   periods, which insofar as practicable shall be in the middle of each
     work period. The authorized rest period time shall be based on the
11   total hours worked daily at the rate of ten (10) minutes net rest time
12   per four (4) hours or major fraction thereof. However, a rest period
13   need not be authorized for employees whose total daily work time is
     less than three and one-half (31/2) hours. Authorized rest period time
14   shall be counted as hours worked for which there shall be no
15   deduction from wages. If an employer fails to provide an employee a
     rest period in accordance with the applicable provisions of this order,
16   the employer shall pay the employee one (1) hour of pay at the
17   employee's regular rate of compensation for each workday that the
     rest period is not provided.
18

19   73.    California Labor Code § 226.7 prohibits any employer from requiring
20   any employee to work during any meal or rest period mandated by an applicable
21   IWC wage order, and provides that an employer that fails to provide an employee
22   with a required rest break or meal period shall pay that employee one additional
23   hour of pay at the employee's regular rate of compensation for each work day that
24   the employer does not provide a compliant meal or rest period.
25   74.    Defendants failed to provide Plaintiffs and California Class members
26   with meal periods as required by law, and failed to authorize and permit the
27   Plaintiffs and California Class members to take rest periods as required by law.
28

                                        19
     SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1    75.    Plaintiffs and the California Class members are therefore entitled to

2  payment of the meal and rest period premiums as provided by law. Additionally,

3  pursuant to Code of Civil Procedure § 1021.5, Plaintiffs and the California Class

4  are entitled to attorneys' fees and costs.

5                          **SIXTH CLAIM FOR RELIEF**

6                  **Unfair Practice under the Unfair Competition Act**

7                   **(On Behalf Plaintiffs and the California Class)**

8    76.    Plaintiffs, on behalf of themselves and the California Class, allege and

9  incorporate by reference the allegations in the preceding paragraphs.

10   77.    Section 17200 of the California Business and Professions Code –

11 California's Unfair Competition Law – prohibits unfair competition by prohibiting,

12 *inter alia*, any unlawful or unfair business acts or practices. The foregoing conduct

13 by Defendants, as alleged, constitutes unlawful business actions and practices in

14 violation of § 17200 *et seq.*

15   78.    Pursuant to Business and Professions Code § 17200 *et seq.*, Plaintiffs

16 and the California Class members are entitled to:   restitution of the overtime

17 earnings, business expenses, and other unpaid wages and premiums alleged herein

18 that Defendants have improperly withheld and retained during a period that

19 commences four years prior to the filing of this action; a permanent injunction

20 requiring Defendants to pay overtime and meal/rest premiums to all workers as

21 defined herein; in California, an award of attorneys' fees pursuant to Code of Civil

22 Procedure section 1021.5, and other applicable law; and costs.

23

24

25

26

27

28

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

### SEVENTH CLAIM FOR RELIEF

#### Late Pay and Waiting Time Penalties

#### (On Behalf of Plaintiffs Lee and Thompson and the California Waiting Time Penalties Subclass)

79.     Plaintiffs Lee and Thompson, on behalf of themselves and the California Waiting Time Penalties Subclass, allege and incorporate by reference the allegations in the preceding paragraphs.

80.     California Labor Code §§ 201 and 202 require an employer to pay its employees all wages due within the time specified by law. Labor Code § 203 provides that if an employer willfully fails to pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

81.     Plaintiffs and Class Members who ceased employment with Defendants are entitled to unpaid compensation, but to date have not received such compensation.

82.     More than thirty days have passed since Plaintiffs and Subclass members left Defendants' employ.

83.     Defendants willfully failed to pay Plaintiffs and Subclass Members any overtime or any meal or rest period premiums.

84.     As a consequence of Defendants' willful failure to timely compensate Plaintiffs and Subclass Members for all hours worked, Plaintiffs and Class Members whose employment ended during the Class Period are entitled to thirty days' wages under Labor Code § 203, together with interest thereon and attorneys' fees and costs.

21

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

**EIGHTH CLAIM FOR RELIEF**

**Civil Penalties under Labor Code Private Attorneys General Act of 2004**

**(On Behalf of Plaintiffs Lee and Thompson and the California Itemized Wage**

**Statement and PAGA Penalties Subclass)**

85.    Plaintiffs Lee and Thompson, on behalf of themselves and the California Itemized Wage Statement and PAGA Penalties Subclass, allege and incorporate by reference the allegations in the preceding paragraphs.

86.    PAGA, Cal. Labor Code § 2698, *et seq.*, enables a Court to award civil penalties for violations of the Labor Code that, prior to the Act, could be assessed and collected only by the Labor and Workforce Development Agency.

87.    Plaintiffs Lee and Thompson have provided notice pursuant to California Labor Code § 2699.3, and on March 29, 2013, asked the California Labor and Workforce Development Agency if it intended to investigate alleged Labor Code violations, as set forth in the letter attached hereto as Exhibit D.

88.    Thirty three days have passed since the postmark date of Plaintiffs' notice to the California Labor Workforce Development Agency, and the agency has not provided notice to Plaintiffs regarding its intention to investigate the alleged violations. As such, pursuant to California Labor Code § 2699.3(a)(2)(A), Plaintiffs Lee and Thompson have exhausted their notice requirements and seek civil penalties under California Labor Code § 2698, *et seq*. Under California Labor Code § 2699.3(a)(2)(C), Plaintiffs were permitted as a matter of right to amend their initial complaint to add this cause of action under PAGA.

89.    Accordingly, on behalf of themselves and all other Class Members who have worked for Defendants at any time since one year prior to the filing of the initial Complaint to the trial in this action ("PAGA Class Members," each a member of the California Itemized Wage Statement and PAGA Penalties Subclass), Plaintiffs Lee and Thompson allege as follows:

---

22

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

90.     California Labor Code § 558 imposes civil penalties, in addition to any other civil or criminal penalty provided by law, upon any employer or other person acting on behalf of an employer who violates a section of Division 2, Part 2, Chapter 1 of the Labor Code or any provision regulating hours and days of work in any Industrial Welfare Commission Wage Order. Pursuant to Labor Code § 558, Defendants are subject to a civil penalty of (1) for an initial violation, fifty dollars ($50) for underpaid Plaintiffs Lee and Thompson and each underpaid PAGA Class Member for each pay period for which the employee was not paid appropriate overtime premiums under Labor Code § 510, as alleged in the Second Claim for Relief, in addition to an amount sufficient to recover unpaid wages; and (2) for each subsequent violation, one hundred dollars ($100) for underpaid Plaintiffs Lee and Thompson and each underpaid PAGA Class Member for each pay period for which the employee was underpaid under Labor Code § 510, as alleged in the Second Claim for Relief, in an addition to an amount sufficient to recover underpaid wages.

91.     Under California Labor Code § 226.3, which provides for civil penalties for violations of the California Labor Code § 226(a) in addition to any other penalty provided by law, Defendants are subject to a civil penalty of two hundred fifty dollars ($250) per Plaintiff (Lee and Thompson) and each PAGA Class Member for the first violation, and one thousand dollars ($1,000) per Plaintiff (Lee and Thompson) and each PAGA Class Member for each subsequent violation of Labor Code § 226(a) for failure to provide timely, accurate, itemized wage statements, as alleged in the Third Claim for Relief.

92.     Under California Labor Code § 2699(f)(2), which provides a civil penalty for those violations of the Labor Code which lack a corresponding statutory penalty, Defendants are subject to a civil penalty of one hundred dollars ($100) for Plaintiffs Lee and Thompson and each PAGA Class Member per pay

23

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1   period for the initial violation of Labor Code § 2802 for their failure to indemnify

2   employees for necessary expenditures and/or losses in discharging their duties, as

3   alleged in the Fourth Claim for Relief, and two hundred dollars ($200) for

4   Plaintiffs Lee and Thompson and each PAGA Class Member per pay period for

5   each subsequent violation of Labor Code § 2802, as alleged in the Fourth Claim for

6   Relief.

7       93.   Under California Labor Code § 558, described above, Defendants are

8   subject to a civil penalty of (1) for an initial violation, fifty dollars ($50) for

9   underpaid Plaintiffs Lee and Thompson and each underpaid PAGA Class Member

10  for each pay period for which the employee was not provided a meal period under

11  Labor Code § 512, as alleged in the Fifth Claim for Relief, in addition to an

12  amount sufficient to recover underpaid wages; and (2) for each subsequent

13  violation, one hundred dollars ($100) for underpaid Plaintiffs Lee and Thompson

14  and each underpaid PAGA Class Member for each pay period for which the

15  employee was underpaid under Labor Code § 512, as alleged in the Fifth Claim for

16  Relief, in addition to an amount sufficient to recover underpaid wages.

17      94.   Under California Labor Code § 2699(f)(2), described above,

18  Defendants are subject to a civil penalty of one hundred dollars ($100) for

19  Plaintiffs Lee and Thompson and each PAGA Class Member per pay period for the

20  initial violation of Labor Code § 226.7 for failing to provide meal periods, as

21  alleged in the Fifth Claim for Relief, and two hundred dollars ($200) for Plaintiffs

22  Lee and Thompson and each PAGA Class Member per pay period for each

23  subsequent violation of Labor Code § 226.7 for failing to provide meal periods, as

24  alleged in the Fifth Claim for Relief.

25      95.   Under California Labor Code § 2699(f)(2), described above,

26  Defendants are subject to a civil penalty of one hundred dollars ($100) for

27  Plaintiffs Lee and Thompson and each PAGA Class Member per pay period for the

28

24

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1    initial violation of Labor Code § 226.7 for failing to provide rest periods, as

2    alleged in the Fifth Claim for Relief, and two hundred dollars ($200) for Plaintiffs

3    Lee and Thompson and each PAGA Class Member per pay period for each

4    subsequent violation of Labor Code § 226.7 for failing to provide rest periods, as

5    alleged in the Fifth Claim for Relief.

6        96.    Under California Labor Code § 2699(f)(2), described above,

7    Defendants are subject to a civil penalty of one hundred dollars ($100) for

8    Plaintiffs Lee and Thompson and each PAGA Class Member per pay period for the

9    initial violation of Labor Code §§ 201 and 202 for their failure to pay earned wages

10    upon discharge, as alleged in the Seventh Claim for Relief, and two hundred

11    dollars ($200) for Plaintiffs Lee and Thompson and each PAGA Class Member per

12    pay period for each subsequent violation of Labor Code §§ 201 and 202, as alleged

13    in the Seventh Claim for Relief

14        97.    Under California Labor Code § 2699(g)(1), Defendants are liable for

15    attorneys' fees and costs with respect to the violations alleged herein.

16                               **PRAYER FOR RELIEF**

17        98.    WHEREFORE, Plaintiffs, on behalf of themselves and all members of

18    the Collective and California Classes, pray for relief as follows:

19            A.     That the Court determine that this action may proceed as a

20                   class action under Rule 23(b)(1) and (3) of the Federal Rules of

21                   Civil Procedure;

22           B.     That Defendants are found to have violated the overtime,

23                   meal/rest period, itemized wage statement/time records, failure

24                   to reimburse, and failure to timely pay wages penalty

25                   provisions of the California wage laws cited above as to the

26                   California Class;

27

28

25

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

C.  That Defendants are found to have violated the overtime provisions of the FLSA as to Plaintiffs and the Collective Class;

D.  That Defendants are found to have violated the FLSA by failing to maintain accurate time records of all the hours worked by Plaintiffs and the Collective Class;

E.  That Defendants' violations as described above are found to be willful;

F.  An award to Plaintiffs and the California and Collective Classes for the amount of unpaid wages owed, liquidated damages and penalties where provided by state and federal law, and interest thereon, subject to proof at trial;

G.  That the Court award waiting time penalties under California Labor Code § 203.

H.  That the Court award penalties and attorneys' fees and costs under PAGA for violations under Labor Code §§ 201, 202, 203, 218.5, 226, 226.3, 226.7, 510, 512, 558, 1194, 1198, the Industrial Welfare Commission Wage Order No. 4, and any other applicable violations;

I.  That Defendants be ordered and enjoined to pay restitution to Plaintiffs and the California Class due to Defendants' unlawful activities, pursuant to California state law cited above;

J.  That Defendants further be enjoined to cease and desist from unlawful activities in violation of state laws cited above;

K.  That the Court grant declaratory relief stating that Defendants' scheme is unlawful;

26

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

| | | |
|---|---|---|
| 1 | L. | For an award of reasonable attorneys' fees and costs pursuant |
| 2 | | to 29 U.S.C. § 216, California Labor Code § 1194, and/or other |
| 3 | | applicable state laws; and |
| 4 | M. | For such other and further relief, in law or equity, as this Court |
| 5 | | may deem appropriate and just. |

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury.

DATED:  June 27, 2013

**BRYAN SCHWARTZ LAW**

By: _____

Bryan Schwartz (SBN 209903)

*Attorneys for Plaintiffs*

SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CONSENT FORM AND DECLARATION

I hereby consent to join a lawsuit against JPMorgan Chase as a Plaintiff to assert claims against it for violations of the wage and hour laws of the United States and/or the state(s) where I worked for JPMorgan Chase. During the past three years, there were occasions when I worked over 40 hours per week for JPMorgan Chase and did not receive overtime compensation.

I worked for JPMorgan Chase as an (please check all that apply):

☑ Appraiser
☐ Other (Specify Title: _Appraiser II_ )

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_Keith Lee_       _3/20/2013_
Signature                    Date

_Kenneth Lee_
Print Name

Fax or Mail To:

Bryan Schwartz Law
1330 Broadway, Suite 1630
Oakland, CA 94612
FAX (510) 444-9301

_Irvine CA / Culver City, CA_
Location(s) Worked (City/State)

CONSENT AND DECLARATION

# EXHIBIT B

CONSENT FORM AND DECLARATION

1
2          I hereby consent to join a lawsuit against JPMorgan Chase as a Plaintiff to assert claims
   against it for violations of the wage and hour laws of the United States and/or the state(s) where I
3  worked for JPMorgan Chase. During the past three years, there were occasions when I worked
4  over 40 hours per week for JPMorgan Chase and did not receive overtime compensation.
          I worked for JPMorgan Chase as an (please check all that apply):
5     ☐ Appraiser
      ☒ Other (Specify Title: Comm'l Review Appraiser
6

7  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and
   correct to the best of my knowledge, information, and belief.

8

9          _____        _3/26/13_
           Signature                        Date

10         _Mark Thompson_
11         Print Name

12
13
14  Fax or Mail To:
15
16  Bryan Schwartz Law
    1330 Broadway, Suite 1630
17  Oakland, CA 94612
    FAX (510) 444-9301
18
19
20
21
22         _Irvine, CA_
23         Location(s) Worked (City/State)
24
25
26
27
28

                    CONSENT AND DECLARATION

# EXHIBIT C

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONSENT FORM AND DECLARATION

I hereby consent to join a lawsuit against JPMorgan Chase as a Plaintiff to assert claims against it for violations of the wage and hour laws of the United States and/or the state(s) where I worked for JPMorgan Chase. During the past three years, there were occasions when I worked over 40 hours per week for JPMorgan Chase and did not receive overtime compensation.

I worked for JPMorgan Chase as an (please check all that apply):

☑ Commercial Production Appraiser

☐ Commercial Review Appraiser

☐ Other (Specify Title: _____ )

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_____  5/29/13
Signature                          Date

David Cameron Acree
Print Name

Fax or Mail To:

Bryan Schwartz Law
1330 Broadway, Suite 1630
Oakland, CA 94612
FAX (510) 444-9301

Culver City / Encino
Location(s) Worked (City/State)

Los Angeles, CA

CONSENT AND DECLARATION

Case 8:13-cv-00511-JST-JPR   Document 38   Filed 07/02/13   Page 35 of 39   Page ID #:382

# EXHIBIT D

# BRYAN SCHWARTZ LAW

1330 Broadway, Suite 1630, Oakland, CA 94612   |   *Tel.* 510-444-9300   |   *Fax* 510-444-9301   |   Bryan@BryanSchwartzLaw.com   |   www.BryanSchwartzLaw.com

March 29, 2013

**VIA CERTIFIED MAIL**

California Labor & Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814
(916) 653-9900

RE: *Kenneth J. Lee, et al. v. JP Morgan Chase & Co., et al.*

Dear Sir or Madam:

Our office represents the Plaintiffs Kenneth J. Lee and Mark G. Thompson in the above-captioned matter concerning putative class claims under California and federal law for unpaid overtime compensation, reimbursement of business expenses, unpaid meal period pay, denied meal and rest breaks, failure to provide timely, accurate, itemized wage statements, failure to keep adequate payroll records, restitution, statutory penalties, interest, and attorneys' fees and costs against JP Morgan Chase & Co., *et al.* (hereinafter "Chase"). I am writing this letter to the LWDA pursuant to the exhaustion requirements of California Labor Code Sections 2699 and 2699.3, because my clients intend to file suit very soon and intend to add claims under the Private Attorney General Act ("PAGA"). The purpose of my letter is to find out whether LWDA intends to investigate my clients' allegations of violations of California Labor Code §§ 200-203, 226, 226.3, 226.7, 510, 512, 517, 1194, 1198, 2802, Industrial Welfare Commission Wage Order No. 4, Business and Professions Code § 17200 *et seq.*, and CCP § 1021.5. The following is a very brief summary of my client's allegations against Chase.

This is an action for relief from Defendants' unlawful misclassification of its commercial production appraisers and review appraisers as exempt from overtime requirements. Chase maintains a commercial banking division that includes a commercial lending sub-division, which sells loans and refinancings secured by commercial or multi-resident income-generating properties. Chase employs Plaintiffs and other similarly situated appraisers to perform appraisals of the property serving as security as part of the loan or refinancing process ("production appraisers") or to review the accuracy of those appraisals ("review appraisers"). Plaintiffs and similarly situated production and review appraisers are non-exempt employees under California law. Plaintiffs challenge Defendants' policy of willfully and unlawfully misclassifying these production appraisers and review appraisers as exempt and thereby refusing to pay them overtime or to provide meal and rest periods, among other violations. Defendants have also failed to reimburse certain Plaintiffs for business expenses, including appropriate mileage, phone and internet service, computer equipment and supplies, and office supplies.

Thank you for your assistance and cooperation in this matter. Please contact the undersigned if you have any questions. We look forward to your response at your earliest convenience.

Sincerely,

Bryan J. Schwartz, Esq.

cc: (by certified mail)

CT Corporation System
  as Registered Agent for JPMorgan Chase Bank, N.A.
818 W. Seventh St.
Los Angeles CA 90017

The Corporation Trust Company
  as Registered Agent for JPMorgan Chase & Co.
Corporation Trust Center 1209 Orange St.
Wilmington, DE 19801

**PROOF OF SERVICE**

KENNETH J. LEE and MARK G. THOMPSON V. JPMORGAN CHASE &CO., ET AL.
CASE NO.: 13-CV-511 (JST)(JPR)

STATE OF CALIFORNIA, COUNTY OF ALAMEDA

     I am over the age of 18 years and not a party to the within entitled action; my business address is 1330 Broadway, Suite 1630, Oakland, California 94612.

     On July 2, 2013, I served the foregoing documents, described as

**SECOND AMENDED COMPLAINT AND EXHIBITS A-D**

on the interested parties to said action by the following means:

[ X ]  (By Mail)    By placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, for collection and mailing on that date following ordinary business practices, in the United States Mail at the offices of Bryan Schwartz Law, Oakland, California, addressed as shown below. I am readily familiar with this business's practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and in the ordinary course of business correspondence would be deposited with the U.S. Postal Service the same day it was placed for collection and processing.

[ X ]  (By Electronic Mail)  By transmitting a true copy thereof by electronic mail to the address shown below. The transmission completed without error on July 2, 2013.

[   ]  (By Personal Service) By personally delivering a true copy thereof, enclosed in a sealed envelope, to the addressees shown below.

[   ]  (By Hand Delivery)  By causing a true copy thereof, enclosed in a sealed envelope, to be delivered by hand to the addresses shown below.

[   ]  (By Overnight Delivery)    By placing a true copy thereof, enclosed in a sealed envelope, with delivery charges prepaid, to be sent by Federal Express, addressed as shown below.

[   ]  (By Facsimile Transmission) By transmitting a true copy thereof by facsimile transmission from facsimile number (510) 444-9301, to the interested parties to said action; the transmission was reported as complete and without error.

     I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

     Executed on July 2, 2013, at Oakland, California.

*Carolyn Sanborn*

CAROLYN SANBORN

**NAME AND ADDRESS/FAX NUMBER OF EACH PERSON SERVED:**

Eric Meckley
Morgan, Lewis & Brockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Email: emeckley@morganlewis.com

Daryl S. Landy
Morgan, Lewis & Brockius LLP
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2121
Email: dlandy@morganlewis.com

# EXHIBIT 2

1

2

3    NOTE: CHANGES MADE BY THE COURT

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA

10

11   KENNETH J. LEE, MARK G.              Case No. SACV 13-0511 JST (JPRx)
     THOMPSON, and DAVID C. ACREE,
12   individually, on behalf of others     Assigned to Judge Josephine Staton
     similarly situated, and on behalf of the   Tucker
13   general public,
                                           **ORDER GRANTING**
14              Plaintiffs,                **STIPULATION REGARDING**
                                           **MOTIONS TO COMPEL**
15        vs.                              **ARBITRATION AND**
                                           **DISMISSAL OF CLAIMS**
16   JPMORGAN CHASE & CO.;
     JPMORGAN CHASE BANK,
17   NATIONAL ASSOCIATION; and
     DOES 1 - 10, inclusive,
18
                Defendants.
19

20   JPMORGAN CHASE BANK, N.A.

21              Counterclaimant,

22        vs.

23   KENNETH J. LEE, MARK G.
     THOMPSON, and DAVID C. ACREE,
24
                Counter-Defendants.
25

26

27

28

ORDER

## ORDER

The Court, having considered the Stipulation among Plaintiffs and Counter-Defendants Kenneth J. Lee, Mark G. Thompson, and David C. Acree (collectively "Plaintiffs") and Defendant JPMorgan Chase & Co. and Defendant and Counterclaimant JPMorgan Chase Bank, N.A. (collectively "Defendants") regarding Defendants' pending motions to compel arbitration, motion for protective order, and the dismissal of Plaintiffs' claims and JPMorgan Chase Bank, N.A.'s counterclaims ("Stipulation"), and finding good cause appearing in the Stipulation, HEREBY ORDERS AS FOLLOWS:

1.      Defendants' pending Motions to Compel Arbitration (Dkt. at 14, 43) are removed from the Court's calendar.  Defendants shall, on or before September 20, 2013, file a new Petition to Compel Arbitration On An Individual Basis that presents the following two issues for this Court to decide:  a) whether the Court or an arbitrator has the authority to decide if the WaMu Binding Arbitration Agreement signed by Plaintiffs Lee and Thompson allows for more than arbitration on an individual basis only; and b) if the Court has such authority, then whether Plaintiffs Lee and Thompson must re-file their claims in arbitration on an individual basis only or whether they may attempt to maintain their claims in arbitration on a class, collective, or representative action basis.  The hearing on such motion shall be noticed for October 18, 2013, or the next available calendar date if October 18, 2013, is already closed.

2.      The parties are ordered to continue to meet and confer regarding the issues raised in Defendants' Motion for Protective Order (Dkt. at 29) and the Court's Minute Order regarding that Motion (Dkt. at 45), and the parties will notify the Court as set forth in the Court's Minute Order whether a ruling on the Motion is necessary.

3.       After the Court rules on Defendants' Petition to Compel Arbitration On An Individual Basis, as set forth Paragraph 1 of this Order, and after the Court, if necessary, rules on the merits of Defendants' Motion for Protective Order, the Court will dismiss with prejudice all of Plaintiffs' claims against Defendants and will dismiss with prejudice Defendant JPMorgan Chase Bank, N.A.'s counterclaims against Plaintiffs as a final disposition of this action, subject to binding arbitration, as set forth in detail in the parties' Stipulation.

4.       Nothing in this Order or in the parties' negotiations preceding the filing of their Stipulation shall be construed as a waiver of:  a) Plaintiffs' right to assert that their individual claims and the claims of the putative class they seek to represent in binding arbitration are tolled by the filing of their respective Complaints in this action; b) Defendants' position that the Court should decide the issue of whether the WaMu Binding Arbitration Agreement signed by Plaintiffs Lee and Thompson allows for more than arbitration on an individual basis; or c) the parties' rights to seek immediate appeal of any of the rulings resulting from the provisions of this Order.

**IT IS SO ORDERED.**

Dated: August 16, 2013

JOSEPHINE STATON TUCKER

The Honorable Josephine S. Tucker
United States District Court Judge

2                                         ORDER

# EXHIBIT 3

1                                        JS-6

2

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11   KENNETH J. LEE, et al., individually, on     CASE NO. SACV 13-511 JLS (JPRx)
     behalf of others similarly situated, and on

12   behalf of the general public,

13

14             Plaintiffs,            **ORDER DENYING DEFENDANTS'**
                                     **MOTION TO COMPEL**

15       vs.                        **ARBITRATION ON AN INDIVIDUAL**

16                                    **BASIS (Doc. 49) AND DISMISSING**
    JPMORGAN CHASE & CO., et al.,          **ACTION**

17

18             Defendants.
    JPMORGAN CHASE BANK, N.A.,

19

20             Counterclaimant,

21       vs.

22

23   KENNETH J. LEE, et al.,

24             Counter-Defendants.

25

26

27

28

                                            1

1    Before the Court is a Motion to Compel Arbitration on an Individual Basis

2  ("Motion") filed by Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

3  (collectively, "JPMorgan" or "Defendants"). (Doc. 49.) Plaintiffs Kenneth J. Lee and

4  Mark G. Thompson ("Plaintiffs") filed an opposition, and Defendants replied. (Opp'n,

5  Doc. 53; Reply, Doc. 59.) The Court finds this matter appropriate for decision without

6  oral argument. Fed. R. Civ. P. 78(b); C. D. Cal. R. 7-15. Accordingly, the hearing set for

7  November 15, 2013, at 2:30 p.m. is VACATED. Having read and considered the parties'

8  papers, the Court DENIES Defendants' Motion.[1]

9  **I.      BACKGROUND**

10    On March 29, 2013, Plaintiffs filed a class action complaint alleging violations of

11  California and federal labor laws and California's unfair competition law arising out of

12  their employment as appraisers for JPMorgan (and/or JPMorgan's predecessor-in-interest

13  Washington Mutual Bank). (Doc. 1.) Plaintiffs bring their claims against the Defendants

14  on class, collective, and representative bases on behalf of various classes of current and

15  former employees. (SAC ¶¶ 18-48, 85-96, Doc. 38.)

16    As part of their employment, Plaintiffs entered into arbitration agreements

17  ("Arbitration Agreements"). (McGuire Decl. ¶¶ 3-4, Exs. 1 & 2, Doc. 49-2; Schwartz

18  Decl. ¶¶ 5-6, Exs. A & B, Doc. 54.) The Arbitration Agreements provide that: "Any and

19  all disputes that involve or relate in any way to my employment (or termination of

20  employment) with Washington Mutual shall be submitted to and resolved by final and

21  binding arbitration." (McGuire Decl., Exs. 1 & 2, at ¶ 1; Schwartz Decl., Exs. A & B, at ¶

22  1.) The Arbitration Agreements do not contain express waivers of class, collective, or

23  representative claims.

24

25

26    [1]    Defendants request that the Court take judicial notice of *Lee v. Goldline International, Inc.*,
No. 11-CV-01495-DSF (C.D. Cal. April 18, 2011), Dkt. 42, Reply In Support of Goldline's

27  Motion to Stay Or Dismiss Proceedings Pending Arbitration. (Doc. 60.) As the Court's decision
does not rely on the document, the Court does not rule on the request.

28

2

1         On June 3, 2013, Defendants filed a Motion to Compel Arbitration.  (Doc. 14.)  On

2    August 14, 2013, the parties filed a joint stipulation regarding issues raised by that motion.

3    (Stip., Doc. 46.)  Plaintiffs agree that, pursuant to their arbitration agreements with

4    Defendants, their claims should be resolved in arbitration.  (Stip. at 3:11-14.)  The parties,

5    however, request that the Court resolve two outstanding issues:

6         •  Should the Court or an arbitrator decide whether the WaMu Binding

7           Arbitration Agreement Plaintiffs Lee and Thompson signed allows for

8           more than arbitration on an individual basis only?

9         •  If the Court has the authority to decide, must Plaintiffs Lee and

10          Thompson re-file their claims in arbitration on an individual basis only,

11          or may they attempt to proceed with arbitration on a class, collective, or

12          representative basis?

13   (*See* Stip. at 4:5-13.)

14        On August 16, 2013, the Court issued an Order removing the previous Motion to

15   Compel Arbitration from the calendar and requiring the Defendants to file a new motion

16   addressed to the two outstanding issues.  (Doc. 47.)  On September 20, 2013, Defendants

17   filed the present Motion.

18   **II.**     **LEGAL STANDARD**

19        The Ninth Circuit recognizes that, generally, a court's role under the Federal

20   Arbitration Act ("FAA") on a motion to compel is "limited to determining (1) whether a

21   valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses

22   the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130

23   (9th Cir. 2000).  "[A]ny doubts concerning the scope of arbitrable issues should be

24   resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

25   460 U.S. 1, 24-25 (1983).  Nevertheless, "[t]he question whether the parties have

26   submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue

27   for judicial determination [u]nless the parties clearly and unmistakably provide

28

3

1   otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT*

2   *& T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "At the same time the

3   [Supreme] Court has found the phrase 'question of arbitrability' *not* applicable in other

4   kinds of general circumstance where parties would likely expect that an arbitrator would

5   decide the gateway matter. Thus 'procedural' questions which grow out of the dispute and

6   bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to

7   decide." *Id.* at 84 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557

8   (1964)) (internal quotation marks omitted).

9   **III.**     **DISCUSSION**

10       The preliminary issue is whether this Court or an arbitrator decides if Plaintiffs may

11   arbitrate on a class, collective, or representative basis. The answer turns on whether the

12   issue is one of arbitrability, which, as noted above, is for the court, or one of procedure,

13   which is left to the arbitrator.[2] While challenges to the enforceability of express class

14   action waivers are questions of arbitrability to be determined by a court, *see, e.g., Ingle v.*

15   *Circuit City Stores, Inc.*, 328 F.3d 1165, 1170, 1175 (9th Cir. 2003), the Supreme Court

16   has not yet decided whether it falls to a court or an arbitrator to *interpret* an arbitration

17   agreement in deciding whether class arbitration is authorized. *See Oxford Health Plans*

18   *LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013) ("[T]his Court has not yet decided whether

19   the availability of class arbitration is a question of arbitrability.").[3]

---

21     [2]   Defendants claim that the Arbitration Agreements explicitly authorize this Court to decide
whether class arbitration is available, (Mot. at 10:15-18), but the provision Defendants cite states

22   no more than that the Arbitration Agreements "may be enforced by a court of competent
jurisdiction through the filing of a motion to compel arbitration, or otherwise." (McGuire Decl.,

23   Exs. 1 & 2, at ¶ 16; Schwartz Decl., Exs. A & B, at ¶ 16.)

24     [3]   Plaintiffs rely on *Veliz v. Cintas Corp.*, 273 Fed. App'x 608 (9th Cir. 2008), in which the
court held that, "the arbitrator [wa]s not bound to follow the district court's view whether the

25   plaintiffs have the ability to proceed on a class or collective basis." *Id.* at 609. *Veliz*'s holding has
limited applicability here, however, because the court did not explain its reasoning on that point,

26   and could have reached that holding even after determining that the availability of class arbitration
is a question of arbitrability. Even questions of arbitrability may be determined by an arbitrator if

27   expressly assigned to the arbitrator by the arbitration agreement. *See, e.g., Momot v. Mastro*, 652

28     (footnote continued)

4

1    Nevertheless, this Court finds useful guidance in the plurality opinion in *Green Tree*

2  *Financial Corp. v. Bazzle*, 539 U.S. 444 (2003).[4]  In *Bazzle*, a plurality of the Court agreed

3  that the determination of whether certain arbitration agreements authorized class

4  arbitration properly lay in the first instance with an arbitrator, not a court.  *See* 539 U.S. at

5  451-53.  The question, the Court reasoned, did not fall into those "limited circumstances"

6  in which parties expect a court, rather than an arbitrator, to make the determination:

7    The question here—whether the contracts forbid class arbitration—does not

8    fall into this narrow exception.  It concerns neither the validity of the

9    arbitration clause nor its applicability to the underlying dispute between the

10   parties. . . .  Rather the relevant question here is what *kind of arbitration*

11   *proceeding* the parties agreed to. That question does not concern a state

12   statute or judicial procedures, . . . .  It concerns contract interpretation and

13   arbitration procedures.  Arbitrators are well situated to answer that question.

14  *Id.* at 452-53 (internal citations omitted).

15    Defendants argue that in the wake of the Supreme Court's decision in *Stolt-Nielsen*

16  *S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), *Bazzle* is no longer

17  persuasive, and allowing an arbitrator to decide when an arbitration agreement authorizes

18  class arbitration would "contradict *Stolt-Nielsen*." (Mot. at 8:18-9:7, 6:4-10.)  Neither

19  contention has merit, as *Stolt-Nielsen* concerns only *how to decide* whether an arbitration

20  agreement authorizes class arbitration, not *who decides*.

21    *Stolt-Nielsen* held that "a party may not be compelled under the FAA to submit to

22  class arbitration unless there is a contractual basis for concluding that the party *agreed* to

23

24  _____

25  F.3d 982, 988 (9th Cir. 2011) ("[T]he parties' agreement clearly and unmistakably indicates their intent for the arbitrators to decide the threshold question of arbitrability.").

26    [4]    Though Defendants are correct that a plurality opinion "is not binding" (Reply at 7:2), *Bazzle* is nevertheless instructive.  *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1127 n.5

27  (9th Cir. 2011) ("[W]e follow the [Supreme Court] plurality opinion as persuasive authority, though 'not a binding precedent.'" (quoting *Texas v. Brown*, 460 U.S. 730, 737 (1983))).

28

1    do so." 559 U.S. at 684. The Court had no occasion, however, to rule on whether the

2    availability of class arbitration is a question for the court or an arbitrator to decide because

3    the parties had "expressly assigned this issue to the arbitration panel, and no party argue[d]

4    that this assignment was impermissible." *Id.* at 680. The Court noted only that, in *Bazzle*,

5    "the plurality decided" that the availability of class arbitration is for an arbitrator to decide.

6    *Id. Stolt-Nielsen*, therefore, does not dampen *Bazzle*'s persuasive authority. *Stolt-Nielsen*

7    simply commands fidelity to contractual terms in arbitration agreements by *both* courts and

8    arbitrators, without distinguishing their respective roles. *See id.* at 684 ("It falls to courts

9    *and arbitrators* to give effect to these contractual limitations, and when doing so, courts

10    and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent

11    of the parties." (emphasis added)). Therefore, it does not contradict *Stolt-Nielsen* to assign

12    the question of the availability of class arbitration to an arbitrator. Similarly, the Supreme

13    Court in *AT&T Mobility LLC v. Concepcion* affirmed that class arbitration must be

14    "consensual," but did not hold that it would be inappropriate to leave to an arbitrator the

15    question of whether an arbitration agreement included consent to class arbitration. 131 S.

16    Ct. 1740, 1750-51 (2011).

17         This Court finds *Bazzle* persuasive, a conclusion supported by decisions from the

18    Third Circuit subsequent to *Stolt-Nielsen*. In *Vilches v. The Travelers Companies, Inc.*, the

19    Third Circuit considered a dispute over whether a class action waiver contained in an

20    amendment to an arbitration agreement was effective. 413 Fed. App'x 487, 491-92 (3d

21    Cir. 2011). No party disputed that the original arbitration agreement required "all

22    employment disputes" to be arbitrated. *Id.* at 490. Under those circumstances, the court,

23    relying on *Bazzle*, concluded that whether class action procedures were available was a

24    question for the arbitrator: "Assuming binding arbitration of all employment disputes, the

25    contested waiver provision solely affects the *type of procedural arbitration mechanism*

26    applicable to this dispute." *Id.* at 491-92. *See also Quilloin v. Tenet HealthSystem*

27    *Philadelphia, Inc.*, 673 F.3d 221, 232 (3d Cir. 2012) ("[T]he actual determination as to

28

1  whether class action is prohibited is a question of interpretation and procedure for the

2  arbitrator."); *Hesse v. Sprint Spectrum L.P.*, No. C06-0592JLR, 2012 WL 529419, at \*4

3  (W.D. Wash. Feb. 17, 2012) (holding that whether earlier version of arbitration clause or

4  later version containing a class action waiver was applicable, "[a]s in *Vilches*, . . . goes to

5  the procedural mechanisms available at arbitration, and thus is a procedural issue that

6  should be left for the arbitrator to decide").

7        In a recent decision, the Sixth Circuit diverged from the reasoning of the Third

8  Circuit, holding that the question of whether class arbitration is permitted is a question of

9  arbitrability for the court. *See Reed Elsevier, Inc. v. Crockett*, No. 12-3574, 2013 WL

10  5911219, at \*4 (6th Cir. Nov. 5, 2013).  The Sixth Circuit found *Bazzle* unpersuasive,

11  reasoning that because the Supreme Court had concluded that various features of class

12  actions made them poorly suited for arbitration, the availability of class procedures must

13  be a question of arbitrability for the court. *See id.* at \*4 (citing *Stoel-Nielsen*, 559 U.S. 662

14  and *Concepcion*, 131 S. Ct 1740).  However, this Court concludes, as did the Third Circuit,

15  that the Supreme Court identified these features only to explain why the standard for

16  determining when parties have consented to class arbitration is stringent. *See Vilches*, 413

17  Fed. App'x at 492 n.3 ("Although contractual silence in the post-*Bazzle* era has often been

18  treated by arbitrators as authorizing class arbitration, *Stolt–Nielsen* suggests a return to the

19  pre-*Bazzle* line of reasoning on contractual silence, albeit decided by an arbitrator, because

20  it focuses on what the parties agreed to—expressly or by implication."). *See also Guida v.*

21  *Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 619 (E.D.N.Y. 2011) ("It is apparent that the

22  Supreme Court simply intended to say that arbitration on a class basis is not a preferred

23  method to proceed and should not be inferred lightly from a contract.").

24        Here, as in *Vilches*, neither Plaintiffs nor Defendants contest that Plaintiffs' claims

25  are subject to arbitration.  The Arbitration Agreements cover "all claims that involve or

26  relate in any way to [Plaintiffs'] employment."  (McGuire Decl., Exs. 1 & 2, at ¶ 1;

27  Schwartz Decl., Exs. A & B, at ¶ 1.)  The only question, as in *Bazzle*, is the interpretive

28

7

1  one of whether or not the agreements authorize Plaintiffs to pursue their claims on a class,

2  collective, or representative basis.  That question concerns the procedural arbitration

3  mechanisms available to Plaintiffs, and does not fall into the limited scope of this Court's

4  responsibilities in deciding a motion to compel arbitration.

5  **IV.        CONCLUSION**

6        For the foregoing reasons, the Court DENIES Defendants' Motion to Compel

7  Arbitration on an Individual Basis.  Pursuant to the parties' Stipulation Regarding Motions

8  to Compel Arbitration and Dismissal of Claims, (Doc. 46), this action is dismissed in its

9  entirety with prejudice, and is subject to binding arbitration.

10

11

12  DATED: November 14, 2013        JOSEPHINE L. STATON

13                                  JOSEPHINE L. STATON
                                    UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

# EXHIBIT 4

(Page 1 of 2)

 **Washington Mutual**                     *Binding Arbitration Agreement*

Washington Mutual believes that, if a dispute related to your employment here arises, it is preferable for both you and the Company that it be resolved without resorting to litigation. As part of its Internal Dispute Resolution Program, which is available to all employees, the Company and its employees mutually agree that any disputes that cannot be resolved internally will go to binding arbitration, because it is a quicker and less disruptive process than litigation.

I, ___Kenneth Lee_____, in consideration of my employment with Washington Mutual, Inc. or any of its affiliates or subsidiaries ("Washington Mutual") agree with Washington Mutual as follows:

1.   Any and all disputes that involve or relate in any way to my employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration.

2.   Washington Mutual and I understand that by entering into this Agreement, each of us is waiving any right we may have to file a lawsuit or other civil action or proceeding relating to my employment with Washington Mutual, and waiving any right we may have to resolve employment disputes through trial by jury. We agree that arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.

3.   This Agreement is intended to cover all civil claims that involve or relate in any way to my employment (or termination of employment) with Washington Mutual, including, but not limited to, claims of employment discrimination or harassment on the basis of race, sex, age, religion, color, national origin, sexual orientation, disability and veteran status (including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Immigration Reform and Control Act, and any other local, state or federal law concerning employment or employment discrimination), claims for breach of any contract or covenant, tort claims, claims based on violation of public policy or statute, and claims against individuals or entities employed by, acting on behalf of, or affiliated with Washington Mutual. The only exceptions to this are

- Claims for benefits under a plan that is governed by ERISA,
- Claims for unemployment and workers compensation benefits,
- Claims for injunctive relief to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees.

4.   I understand and agree that, despite anything in this Agreement to the contrary, I am not waiving the right to file a complaint or charge with any government agency authorized to address employment-related matters, including the Equal Employment Opportunity Commission, the Department of Labor, the Occupational Safety and Health Commission, the National Labor Relations Board, the Immigration and Naturalization Service, and any other comparable local, state, or federal agency. I also understand and agree that, despite anything in this Agreement to the contrary, either party may request a court to issue such temporary or interim relief (including temporary restraining orders and preliminary injunctions) as may be appropriate, either before or after arbitration is commenced. The temporary or interim relief may remain in effect pending the outcome of arbitration. No such request shall be a waiver of the right to submit any dispute to arbitration.

5.   Arbitration under this Agreement shall be conducted before a single arbitrator and shall take place within the state where I am currently employed by Washington Mutual, or where I was so employed at the time of termination.

6.   In order to initiate arbitration, Washington Mutual or I must notify the other party in writing of the decision to initiate arbitration, either by personal delivery or certified mail. The statute of limitations otherwise applicable under law shall apply to the delivery of the notice of arbitration. The notice should include the following information about the employee: name, home address, work address, work and home phone numbers, and the following information about the claim(s): date, location, nature of the claims or dispute, facts upon which the claims are made, and remedy requested. Any notice of arbitration initiated by Washington Mutual shall be sent to my last known residence address as reflected in my personnel file at Washington Mutual. Notice of arbitration initiated by me shall be sent to Washington Mutual's Legal Department, attention Associate General Counsel - Litigation. The Legal Department's address is currently 1201 Third Avenue, WMT 1706, Seattle, Washington 98101.

7.   Washington Mutual and I will attempt to agree upon a mutually acceptable arbitrator. If Washington Mutual and I are unable to agree upon an arbitrator, we will submit the dispute to the American Arbitration Association ("AAA"). If AAA is unable or unwilling to accept the matter, we will submit the matter to a comparable arbitration service. The arbitration shall be conducted in accordance with the laws of the state in which the arbitration is conducted and the rules and requirements of the arbitration service being utilized, to the extent that such rules and requirements do not conflict with the terms of this Agreement.

8.   At the request of either Washington Mutual or myself, the arbitrator will schedule a pre-hearing conference to, among other things, agree on procedural matters, obtain stipulations, and attempt to narrow the issues. The arbitrator shall have authority to entertain a motion to dismiss and/or a motion for summary adjudication by any party.

*Continued on next page*

3364 (12/04)                                                                          

EXHIBIT A
Page 68

03-19-2007   02:08pm   From-CAD Costa Mesa                               T-766   P.003/006   F-952

## Binding Arbitration, continued

9.   Either party shall be entitled to conduct a limited amount of discovery prior to the arbitration hearing.  Either party may make a request for production of documents from the other party.  Either party may take a maximum of two (2) depositions.  Either party may apply to the arbitrator for further discovery or to limit discovery.  The arbitrator has the discretion to enter an appropriate order upon a showing of sufficient cause.  If any documents requested or to be produced contain or refer to matters that are private, proprietary and/or confidential, the arbitrator shall make an appropriate protective order prohibiting or limiting use and disclosure of such documents and providing for return of documents produced after the arbitration is concluded.

10.   During the arbitration process, Washington Mutual and I may each make a written demand on the other for a list of witnesses, including experts, to be called and/or copies of documents to be introduced at the hearing.  The demand must be served at least forty-five (45) days prior to the hearing.  The list and copies of documents must be delivered within fifteen (15) days of service of the demand.

11.   Either party may file a pre-hearing brief with the arbitrator.  Each brief must be served on the arbitrator and the other party at least five (5) working days prior to the hearing and, if not timely served, must be disregarded by the arbitrator.  The brief shall specify the facts the party intends to prove, analyze the applicable law or policy, and specify the remedy sought.  At the close of the hearing, each party shall be given leave to file a post-hearing brief.  The time for filing the post-hearing brief shall be set by the arbitrator.

12.   Each party, at its own expense, has the right to hire an attorney to represent it in the arbitration.  All parties shall have the right to present evidence at the arbitration, through testimony and documents, and to cross-examine witnesses called by another party.  Each party shall pay the fees of any witnesses testifying at its request, and pay the cost of any stenographic record of the arbitration hearing should it request such a record.  The requesting party must notify the other of such arrangements at least two (2) working days before the hearing.

13.   Any filing fee will be paid by the party initiating arbitration.  To the extent such a fee exceeds the cost of filing a lawsuit in a court of that jurisdiction, Washington Mutual will reimburse the difference.  Any postponement or cancellation fee imposed by the arbitration service will be paid by the party requesting the postponement or cancellation.  During the time the arbitration proceedings are ongoing, Washington Mutual will advance any required administrative or arbitrator's fees.  Each party will pay its own witness fees.

14.   The arbitrator shall issue a written and signed statement of the basis of his or her decision, including findings of fact and conclusions of law.  In making the decision and award, if any, the arbitrator shall apply applicable substantive law.  The arbitrator may only award any remedy that would have been available in court.  The decision and award, if any, shall be consistent with the terms of this Agreement and shall include an allocation of the costs of the arbitration proceeding between the parties.

15.   Each party agrees to promptly pay any arbitration award against it at the conclusion of the arbitration.  Washington Mutual and I agree that the decision of the arbitrator shall be final and binding on all parties and shall be the exclusive remedy of the parties.

16.   This Agreement may be enforced by a court of competent jurisdiction through the filing of a petition to compel arbitration, or otherwise.  The decision and award of the arbitrator may also be judicially enforced pursuant to applicable law.

17.   Because of the interstate nature of Washington Mutual's business, this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq, (the "FAA").  The provisions of the FAA (and to the extent not preempted by the FAA, the provisions of the law of the state of my principal place of employment with Washington Mutual that generally apply to commercial arbitration agreements, such as provisions granting stays of court actions pending arbitration) are incorporated into this Agreement to the extent not inconsistent with the other terms of this agreement.

18.   I understand and agree that nothing in this agreement shall limit or modify the at-will nature of my employment relationship with Washington Mutual or require any particular action or procedures prior to termination of employment.

19.   We agree that if any provision of this Agreement is found to be unenforceable to any extent or in violation of any statute, rule, regulation or common law, it will not affect the enforceability of the remaining provisions and the court shall enforce the affected provision and all remaining provisions to the fullest extent permitted by law.

20.   This Agreement cannot be modified except by an amendment in writing, signed by both parties.

21.   By presenting this Agreement to me, Washington Mutual agrees to be bound by its terms.  By signing below, I agree to be bound by its terms.  This Agreement shall remain in full force and effect at all times during and after my employment with Washington Mutual, or any successor in interest to Washington Mutual.

| Employee ID: 2 4 3 4 2 5 | Last four of SSN: 6 2 3 8 | |
| Printed name Kenneth Lee | Employee signature | Date 3/15/2007 |

Mar-23-05   11:00am   From-CAD Costa Mesa                        T-984   P.002/006   F-157

 **Washington Mutual**               *Binding Arbitration Agreement*

Washington Mutual believes that, if a dispute related to your employment here arises, it is preferable for both you and the Company that it be resolved without resorting to litigation.  As part of its internal Dispute Resolution Program, which is available to all employees, the Company and its employees mutually agree that any disputes that cannot be resolved internally will go to binding arbitration, because it is a quicker and less disruptive process than litigation.

I, Mark G. Thompson _____, in consideration of my employment with Washington Mutual, Inc. or any of its affiliates or subsidiaries ("Washington Mutual") agree with Washington Mutual as follows:

1.   Any and all disputes that involve or relate in any way to my employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration.

2.   *Washington Mutual and I understand that by entering into this Agreement, each of us is waiving any right we may have to file a lawsuit or other civil action or proceeding relating to my employment with Washington Mutual, and waiving any right we may have to resolve employment disputes through trial by jury.*  We agree that arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.

3.   This Agreement is intended to cover all civil claims that involve or relate in any way to my employment (or termination of employment) with Washington Mutual, including, but not limited to, claims of employment discrimination or harassment on the basis of race, sex, age, religion, color, national origin, sexual orientation, disability and veteran status (including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Immigration Reform and Control Act, and any other local, state or federal law concerning employment or employment discrimination), claims for breach of any contract or covenant, tort claims, claims based on violation of public policy or statute, and claims against individuals or entities employed by, acting on behalf of, or affiliated with Washington Mutual.  The only exceptions to this are

   * Claims for benefits under a plan that is governed by ERISA,

   * Claims for unemployment and workers compensation benefits,

   * Claims for injunctive relief to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees.

4.   I understand and agree that, despite anything in this Agreement to the contrary, I am not waiving the right to file a complaint or charge with any government agency authorized to address employment-related matters, including the Equal Employment Opportunity Commission, the Department of Labor, the Occupational Safety and Health Commission, the National Labor Relations Board, the Immigration and Naturalization Service, and any other comparable local, state, or federal agency.  I also understand and agree that, despite anything in this Agreement to the contrary, either party may request a court to issue such temporary or interim relief (including temporary restraining orders and preliminary injunctions) as may be appropriate, either before or after arbitration is commenced.  The temporary or interim relief may remain in effect pending the outcome of arbitration.  No such request shall be a waiver of the right to submit any dispute to arbitration.

5.   Arbitration under this Agreement shall be conducted before a single arbitrator and shall take place within the state where I am currently employed by Washington Mutual, or where I was so employed at the time of termination.

6.   In order to initiate arbitration, Washington Mutual or I must notify the other party in writing of the decision to initiate arbitration, either by personal delivery or certified mail.  The statute of limitations otherwise applicable under law shall apply to the delivery of the notice of arbitration.  The notice should include the following information about the employee: name, home address, work address, work and home phone numbers, and the following information about the claim(s): date, location, nature of the claims or dispute, facts upon which the claims are made, and remedy requested.  Any notice of arbitration initiated by Washington Mutual shall be sent to my last known residence address as reflected in my personnel file at Washington Mutual.  Notice of arbitration initiated by me shall be sent to Washington Mutual's Legal Department, attention Associate General Counsel - Litigation.  The Legal Department's address is currently 1201 Third Avenue, WMT 1706, Seattle, Washington 98101.

7.   Washington Mutual and I will attempt to agree upon a mutually acceptable arbitrator.  If Washington Mutual and I are unable to agree upon an arbitrator, we will submit the dispute to the American Arbitration Association ("AAA").  If AAA is unable or unwilling to accept the matter, we will submit the matter to a comparable arbitration service.  The arbitration shall be conducted in accordance with the laws of the state in which the arbitration is conducted and the rules and requirements of the arbitration service being utilized, to the extent that such rules and requirements do not conflict with the terms of this Agreement.

8.   At the request of either Washington Mutual or myself, the arbitrator will schedule a pre-hearing conference to, among other things, agree on procedural matters, obtain stipulations, and attempt to narrow the issues.  The arbitrator shall have authority to entertain a motion to dismiss and/or a motion for summary adjudication by any party.

*Continued on next page*

3364 (12/04)



Mar-23-05    11:01am   From-CAD Costa Mesa                                    T-984   P.003/006   F-157

## *Binding Arbitration,* continued

9.   Either party shall be entitled to conduct a limited amount of discovery prior to the arbitration hearing. Either party may make a request for production of documents from the other party. Either party may take a maximum of two (2) depositions. Either party may apply to the arbitrator for further discovery or to limit discovery. The arbitrator has the discretion to enter an appropriate order upon a showing of sufficient cause. If any documents requested or to be produced contain or refer to matters that are private, proprietary and/or confidential, the arbitrator shall make an appropriate protective order prohibiting or limiting use and disclosure of such documents and providing for return of documents produced after the arbitration is concluded.

10.   During the arbitration process, Washington Mutual and I may each make a written demand on the other for a list of witnesses, including experts, to be called and/or copies of documents to be introduced at the hearing. The demand must be served at least forty-five (45) days prior to the hearing. The list and copies of documents must be delivered within fifteen (15) days of service of the demand.

11.   Either party may file a pre-hearing brief with the arbitrator. Each brief must be served on the arbitrator and the other party at least five (5) working days prior to the hearing and, if not timely served, must be disregarded by the arbitrator. The brief shall specify the facts the party intends to prove, analyze the applicable law or policy, and specify the remedy sought. At the close of the hearing, each party shall be given leave to file a post-hearing brief. The time for filing the post-hearing brief shall be set by the arbitrator.

12.   Each party, at its own expense, has the right to hire an attorney to represent it in the arbitration. All parties shall have the right to present evidence at the arbitration, through testimony and documents, and to cross-examine witnesses called by another party. Each party shall pay the fees of any witnesses testifying at its request, and pay the cost of any stenographic record of the arbitration hearing should it request such a record. The requesting party must notify the other of such arrangements at least two (2) working days before the hearing.

13.   Any filing fee will be paid by the party initiating arbitration. To the extent such a fee exceeds the cost of filing a lawsuit in a court of that jurisdiction, Washington Mutual will reimburse the difference. Any postponement or cancellation fee imposed by the arbitration service will be paid by the party requesting the postponement or cancellation. During the time the arbitration proceedings are ongoing, Washington Mutual will advance any required administrative or arbitrator's fees. Each party will pay its own witness fees.

14.   The arbitrator shall issue a written and signed statement of the basis of his or her decision, including findings of fact and conclusions of law. In making the decision and award, if any, the arbitrator shall apply applicable substantive law. The arbitrator may only award any remedy that would have been available in court. The decision and award, if any, shall be consistent with the terms of this Agreement and shall include an allocation of the costs of the arbitration proceeding between the parties.

15.   Each party agrees to promptly pay any arbitration award against it at the conclusion of the arbitration. Washington Mutual and I agree that the decision of the arbitrator shall be final and binding on all parties and shall be the exclusive remedy of the parties.

16.   This Agreement may be enforced by a court of competent jurisdiction through the filing of a petition to compel arbitration, or otherwise. The decision and award of the arbitrator may also be judicially enforced pursuant to applicable law.

17.   Because of the interstate nature of Washington Mutual's business, this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq. (the "FAA"). The provisions of the FAA (and to the extent not preempted by the FAA, the provisions of the law of the state of my principal place of employment with Washington Mutual that generally apply to commercial arbitration agreements, such as provisions granting stays of court actions pending arbitration) are incorporated into this Agreement to the extent not inconsistent with the other terms of this agreement.

18.   I understand and agree that nothing in this agreement shall limit or modify the at-will nature of my employment relationship with Washington Mutual or require any particular action or procedures prior to termination of employment.

19.   We agree that if any provision of this Agreement is found to be unenforceable to any extent or in violation of any statute, rule, regulation or common law, it will not affect the enforceability of the remaining provisions and the court shall enforce the affected provision and all remaining provisions to the fullest extent permitted by law.

20.   This Agreement cannot be modified except by an amendment in writing, signed by both parties.

21.   By presenting this Agreement to me, Washington Mutual agrees to be bound by its terms. By signing below, I agree to be bound by its terms. This Agreement shall remain in full force and effect at all times during and after my employment with Washington Mutual, or any successor in interest to Washington Mutual.

Employee ID: 2 0 7 4 7 3    Last four of SSN: 1 2 5 6

Printed name: Mark G. Thompson     Employee signature:     Date: 03/22/2005

EXHIBIT A
Page 71